**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **STEVE NOLAN** | ) | **CASE NO. 1:07CV3077** |
| | ) | |
| **PETITIONER,** | ) | **JUDGE KATHLEEN M. O'MALLEY** |
| | ) | |
| **v.** | ) | **MAGISTRATE JUDGE GREG WHITE** |
| | ) | |
| **CHRISTINE MONEY, WARDEN** | ) | |
| | ) | |
| **RESPONDENT.** | ) | **REPORT AND RECOMMENDATION** |

Petitioner, Steven Nolan, ("Nolan") challenges the constitutionality of his conviction in the case of *State v. Nolan*, Cuyahoga County Common Pleas Case No. CR463951.  Nolan, through counsel, filed a Writ of Habeas Corpus (Doc. No. 1.) pursuant to 28 U.S.C. § 2254 on October 9, 2007, with the United States District Court for the Northern District of Ohio.  On December 20, 2007, Respondent filed her Answer/Return of Writ.  (Doc. No. 6.)  Nolan filed his Traverse on January 18, 2008.  (Doc. No. 7.)  This matter is before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636 and Local Rule 72.2.  For the reasons set forth in detail below, the Magistrate Judge respectfully recommends Nolan's Petition be denied.

### I.  Facts

The Ohio Court of Appeals, Eighth Appellate District, Cuyahoga County, set forth the facts underlying Nolan's conviction as follows:

> Defendant Steve Nolan appeals from his conviction for attempted kidnapping. For the reasons set forth below, we affirm the finding of guilt, vacate the sentence and remand for resentencing.
>
> On March 24, 2005, defendant was indicted for one count of attempted kidnapping. He pled not guilty and moved for a *voir dire* hearing of the identifying witnesses. The trial court held a hearing on this motion on July 14, 2005. Cleveland Police Lt. Gail Maxwell and Det. Michael Meyer testified that defendant was placed in a line-up with five other men of similar height, build, complexion and appearance. The complaining witness, sixteen year-old Stephanie Martin, then testified after the trial court adjourned the proceedings and reconvened in chambers and outside of the presence of defendant. Martin testified

that she identified defendant from the line-up and that she thought he could see her so she fled the room crying. She also identified photographs of a vehicle owned by defendant. The trial court then granted defendant 30 days to review the transcript and determine whether he would file a motion to suppress the identification.

The matter proceeded to a jury trial on March 13, 2006. The state's evidence demonstrated that Martin, a student at Glenville High School, was waiting for a bus at the bus stop at Arbor Road and St. Clair Avenue at approximately 7:30 a.m., on March 11, 2005. A black Jeep Cherokee with tinted windows and white numbers and letters pulled into the parking lot behind the bus stop.

The driver asked Martin if he could talk to her and Martin said no. The man repeated the request and said that he could put money into her pocket and told her to get into the jeep. Martin again said no and the driver got out of the car and walked toward Martin. Martin ran and the man chased her and told her to get into the car. Martin ran to the left and the man ran in the same direction after her. Martin continued running and the man then returned to his car and left the scene. According to Martin, he was wearing a brown jacket, blue cap, blue jeans and blue Timberland boots.

Martin fled to her home and her mother called the police. Martin conveyed her description of the vehicle and the man to the police. The case received media attention and two days later, Det. Moore received an anonymous tip that the vehicle was on Columbia Road. Officer Jerry Tucker responded to the area and a male flagged him down and indicated that a suspicious car with white letters and numbers was in a nearby driveway. Tucker went to the house and spoke with defendant then arrested him. His car was towed and blankets and alcohol were removed from the passenger compartment.

Martin was shown pictures of defendant's car and identified them as the car driven by the man who chased her. Lt. Gail Maxwell selected five other men of similar height, weight and appearance to participate in a line up with defendant. Martin identified defendant and made a brief statement that indicated he was the man who had chased her.

Defendant elected to present evidence and offered the testimony of Lorenzo Willis. Willis stated that he was with defendant at a party for contractors which began on the night of March 10, 2005 and ended the next morning at 8:00 or 9:00 a.m. According to Willis, defendant was one of the last people to leave and he observed defendant cleaning snow off of his car right before he left.

Defendant was subsequently convicted of the offense and sentenced to four years of incarceration.

(Resp. Exh. 1.) *State of Ohio v. Steve Nolan*, 2007 Ohio 1299; 2007 Ohio App. Lexis 1196, No. 88111, *2-4 (Cuyahoga Cty App. Court March 22, 2007).

## II.  Procedural History

### A.  Underlying Case

The Cuyahoga County Grand Jury charged Nolan with attempted kidnapping in violation of *Ohio Rev. Code* §§ 2923.02/2905.01.  (Resp. Exh. 2.)

Nolan, represented by counsel, Edward Larue, pled "not guilty."  On March 13, 2006, a jury found Nolan guilty of attempted kidnapping.  (Resp. Exh.3.)  On April 24, 2006, the trial court sentenced Nolan to four years in prison.  *Id*.

### B.  Direct Appeal

On May 3, 2006, Nolan, represented by new counsel, Paul Mancino, Jr., filed a notice of appeal raising seven assignments of error.

1. Defendant was denied due process of law when the court overruled his motions for judgment of acquittal.
2. Defendant was denied due process of law when the court did not suppress evidence resulting from defendant's warrantless arrest and subsequent identification procedure.
3. Defendant was denied his constitutional right to be present and his right to a public trial when the court conducted an examination of a witness in the court's chambers.
4. Defendant was denied due process of law when the court gave an "on or about" instruction when defendant presented alibi evidence.
5. Defendant was denied due process of law when the court failed to give an alibi instruction.
6. Defendant was denied effective assistance of counsel.
7. Defendant was denied his Sixth and Fourteenth Amendment rights when the court based its sentence on facts found by the court and not alleged in the indictment nor found by a jury.

(Resp. Exhs. 10, 12.)

On March 22, 2007, the state court of appeals affirmed the conviction, vacated the original sentence (based on the seventh assignment of error having merit), and remanded for re-sentencing.

On April 2, 2007, Nolan, through counsel, Paul Mancino, filed an application for reconsideration (as to the definition of "force" and the courts failure to address the element of "substantial risk of serious physical harm") and a motion for certification of conflict (as to the court's failure to provide an alibi instruction) with the state appellate court.  (Resp. Exh. 15.)

On April 16, 2007, without opinion, the court denied both motions.  (Resp. Exh. 18.)

On May 21, 2007, Nolan through the same counsel, filed a timely notice of appeal and jurisdiction memorandum with the Ohio Supreme Court presenting six propositions of law.

-3-

1.  A conviction violates due process of law when the prosecution fails to present evidence in support of <u>all</u> elements of the offense.
2.  A defendant has been denied due process of law when defendant has been arrested at his home without a warrant which resulted in a warrantless seizure of his vehicle and his subsequent identification.
3.  A defendant has been denied his constitutional right to be present and his right to a public trial where the court conducts an examination of a witness in the chambers.
4.  A defendant has been denied due process of law when the court instructs the jury in an "on or about" instruction when defendant present (sic)  alibi evidence.
5.  A defendant has been denied due process of law when the court fails to give an alibi instruction where the defendant has offered alibi evidence.
6.  A defendant has been denied effective assistance of counsel where through errors and omissions his right to a fair trial has been prejudiced.

(Resp. Exhs. 19-21.)

On August 29, 2007, the Ohio Supreme Court denied leave and dismissed the appeal as

not involving any substantial constitutional question.  (Resp. Exh. 22.)  There was no further

appeal from this judgment.

On October 9, 2007, the trial court re-sentenced Nolan to the same four-year prison term

it had imposed prior to the court of appeals remand.

**C.  Federal Writ of Habeas Corpus**

On October 9, 2007, Nolan timely filed through counsel, Paul Mancino, a federal habeas

petition presenting five grounds for relief:

1.  Fourteenth Amendment.
    Supporting Facts: Petitioner's conviction violated due process of law as the prosecution had failed to present evidence to support all of the elements of the offense of attempted kidnapping.
2.  Fourth and Fourteenth Amendment.
    Supporting Facts: Petitioner was denied due process of law when he was arrested at his home without a warrant.  As a result of his warrantless arrest and seizure of his vehicle an identification process was undertaken.
3.  Sixth Amendment.
    Supporting Facts: Petitioner was denied his constitutional right to be present and his right to a public trial where the court conducted an examination of a witness in the court's chambers and excluded petitioner.
4.  Fourteenth Amendment.
    Supporting Facts: Petitioner was denied due process of law when the court instructed the jury that it

-4-

> could convict on or about the offense alleged in the indictment where petitioner had presented alibi evidence on a date claimed in the indictment. Moreover, petitioner was denied due process of law when the trial court failed to give an alibi instruction where petitioner offered substantial alibi evidence.
>
> 5.    Six[th] Amendment.
>        Supporting Facts: Petitioner was denied effective assistance of counsel because or (sic) errors and omissions by his trial counsel which resulted in substantial prejudice.

(Petition 4-5.)

While arguing that the Petition should be denied, Respondent contends that Ground Four is partially defaulted and Ground Five is waived.  However, this Court declines to address the procedural default issue, and will instead proceed to address the merits of Nolan's claim.  The United States Supreme Court has observed that federal courts are not required to address a procedural default issue before deciding against a petitioner on the merits.  *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).  The Sixth Circuit has also approved this rule where the procedural default question is complicated and unnecessary to the court's determination of the case.  *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *Jackson v. Anderson*, 141 F.Supp.2d 811, 826-27 (N.D. Ohio 2001).

### III. Standard of Review

**A.  Standard**

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law."  *Ruimveld*, 404 F.3d at 1010, *quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir.2002).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Id.* at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions."  *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th 2006), *citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998).

State court factual determinations are "presumed to be correct," and the party seeking habeas relief has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001); *Brumley*, 269 F.3d at 637.  This presumption applies to factual findings of a state appellate court made from the trial court record.  *Brumley*, 269 F.3d at 637.

For purposes of federal habeas corpus review, a constitutional error that implicates trial procedures shall be considered harmless unless it had a "substantial and injurious effect or

influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *accord California v. Roy*, 519 U.S. 2, 4-5 (1996); *Fulcher v. Motley*, 444 F.3d 791, 808-09 (6th Cir. 2006). The Supreme Court recently reaffirmed use of the *Brecht* standard "whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman [v. California*, 386 U.S. 18 (1967)]. . . ." *Fry v. Pliler*, 127 S. Ct. 2321, 2328 (2007). *Fry*, thus, effectively overruled the Sixth Circuit's contrary holding in *Eddleman v. McKee*, 471 F.3d 576, 578 (6th Cir. 2006). A district court's determination that an error was harmless is reviewed *de novo*. *Madrigal v. Bagley*, 413 F.3d 545, 551 (6th Cir. 2005). When applying the *Brecht* standard, rather than place a burden on a party to prove or disprove an error's effect or influence on the verdict, the Supreme Court has clarified that it is for the judge sitting on habeas review to decide whether the error so influenced the verdict. *O'Neal v. McAninch*, 513 U.S. 432, 435-38 (1995). If the judge is sure that the error had no or very slight effect or influence, the verdict and judgment must stand. *Id*. However, if the judge has grave doubt as to whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict, the judge must treat the error as if it did and grant the habeas writ. *Id.; accord Gravley*, 87 F.3d at 789; *Houston v. Dutton*, 50 F.3d 381, 386 n.1 (6th Cir. 1995).

The Supreme Court noted, however, that certain errors implicating fundamental constitutional process may require the reversal of a conviction without resorting to a harmless-error analysis. *Brecht,* 507 U.S. at 638 n.9; *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991); *see also United States v. Gonzalez-Lopez*, 126 S. Ct. 2557, 2563-64 (2006). The Court thus divided constitutional errors into two classes: 1) "trial errors," which occurred during presentation of the case to the jury and whose effect may be "'quantitatively assessed in the context of other evidence presented in order to determine whether [they were] harmless beyond a reasonable doubt'"; and 2)"structural defects," which "'defy analysis by "harmless error" standards'" because they "'affec[t] the framework within which the trial proceeds,'" rather than being "'simply an error in the trial process itself.'" *GonzalezLopez*, 126 S. Ct. at 2563-64 (*quoting Fulminante*, 499 U.S. at 307-10).

-7-

"Trial errors" include most constitutional errors.  *Id*. at 2564 (*citing Fulminante*, 499 U.S. at 306).  The Court has recognized far fewer "structural errors."   Denial of the right to a public trial is considered a structural error.[1]  *See Waller v. Georgia*, 467 U.S. 39 (1984).

## IV.  Merit Review

### A.  Ground 1 - Sufficiency of Evidence as to Attempted Kidnapping

Nolan argues that there was insufficient evidence to support his conviction as to the offense of attempted kidnapping.[2]  He further claims that the appellate court did not properly evaluate the evidence as it related to the elements of the offense.

### 1.  State Court Adjudication

The state appellate court addressed Nolan's insufficiency of evidence claim and observed that the following evidence was sufficient to establish the elements of attempted kidnapping:

> In this matter, the evidence demonstrated that defendant asked if he could talk to Martin and Martin said no. The man repeated the request and said that he could put money into her pocket. He then told her to get into the jeep. Martin again said no and the driver got out of the car and walked toward Martin. Martin ran and the man ran after her and told her to get into the car. In short, he attempted to lure her into his car then chased her when she refused to comply. Construing this evidence

---

[1]Other structural errors include the denial of counsel, *see Gideon v. Wainwright*, 372 U.S. 335 (1963); denial of the right of self-representation, *see McKaskle v. Wiggins*, 465 U.S. 168 (1984); denial of the right to trial by jury by giving a defective reasonable-doubt instruction, *see Sullivan v. Louisiana*, 508 U.S. 275 (1993); and, most recently, erroneous deprivation of the right to counsel of choice.  *See Gonzalez-Lopez*, 126 S. Ct. 2557.

[2]*Ohio Rev. Code* § 2905.01 Kidnapping, states, in pertinent part:
   (B) No person, by force, threat, or deception, . . . by any means, shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim or, in the case of a minor victim, under circumstances that either create a substantial risk of serious physical harm to the victim or cause physical harm to the victim:
      (1) Remove another from the place where the other person is found;
      (2) Restrain another of the other person's liberty; . . .

*Ohio Rev. Code* § 2923.02 Attempt, states, in pertinent part:
   (A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense.

-8-

most favorably to the state, to determine whether the jury in this instance could have found the essential elements of attempted kidnapping proven beyond a reasonable doubt, we conclude that the evidence manifests defendant's physical exertion at catching Martin and removing her from the place where she was found and manifests restraint of her freedom of movement and was sufficient to establish the offense of attempted kidnapping.

(Resp. Exh. 1 at Paragraph 23.)

### 2. Federal Standard

Despite the general prohibition against federal habeas corpus review of issues of state law, *see Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), a claim that the evidence was insufficient to convict a petitioner is cognizable under 28 U.S.C. § 2254. *See Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006). The Due Process Clause "forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt," *Fiore v. White*, 531 U.S. 225, 28-29 (2001).

Sufficient evidence supports a conviction if, after viewing the evidence (and the inferences to be drawn therefrom) in the light most favorable to the prosecution, the court can conclude that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Apanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006); *United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005), *cert. denied*, 126 S.Ct. 2909 (2006). "This requires successful challengers to meet a very high threshold, even with respect to newly-discovered evidence." *Apanovitch*, 466 F.3d at 488 (*citing Schlup v. Delo*, 513 U.S. 298, 329 (1995)). Obviously, this standard of review does not permit the federal court to make its own subjective determination of guilt or innocence; the standard gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the facts. *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993); *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). Under the AEDPA, this Court's task is to determine whether it was objectively unreasonable for the Ohio Court of Appeals to conclude that a rational trier of fact, after viewing the evidence in the light most favorable to the state, could have found that Petitioner committed the essential elements of the crime beyond a reasonable doubt. *See Nash v. Eberlin*, 258 Fed.Appx. 761, 2007 WL 4438008,

-9-

*4 (6th Cir. Ohio, Dec. 2007).

### 3. Analysis

Nolan argues that the appellate court did not employ the proper definition of "force" and failed to consider the element requiring "circumstances which created a substantial risk of [serious] physical harm."

First, *Ohio Rev. Code* § 2901.01(A)(1) defines force as follows:

> Any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing.

The appellate court cited case law to show that force may properly be defined as "effort" rather than violence. *State v. Lane*, 50 Ohio App.2d 41, 45 (1976).  It also relied on *State v. Muniz*, 162 Ohio App.3d 198 (2005), wherein the defendant was convicted of attempting to abduct three separate victims.[3]  Muniz attempted to grab one of his victims while hanging out of his car window; as to the second victim, he blocked her way as she walked through a parking lot; and, as to the third victim, he followed her while she walked through a hallway of a high school. The *Muniz* Court found that there was enough force in each instance to support the conviction.

Respondent argues that the evidence presented demonstrated "force."  Nolan asked the victim several times to get into his vehicle.  When the victim said no, he exited his vehicle and moved towards her.  The victim turned to run and he chased her.  The jury found that this was sufficient to demonstrate Nolan's attempt by "force, threat or deception" to remove the victim from the scene or otherwise restrain her liberty.  The "force" element was demonstrated by the

---

[3]The elements of abduction under *Ohio Rev. Code* § 2905.02 are:
(A) No person, without privilege to do so, shall knowingly do any of the following:
  (1)  By force or threat, remove another from the place where the other person is found;
  (2)  By force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear;
  * * *
( C) Whoever violates this section is guilty of abduction, a felony of the third degree.

-10-

"effort" to get the victim into the car.

In *Lane*, the court further explained compulsion and constraint as follows: "[T]he statute clearly indicates that 'compulsion *** physically exerted' . . . constitutes force.  The same is true of constraint. * * * The word 'compulsion' is usually applied to a power or agency that compels, usually making an individual follow a will not his own.  'Constraint' usually applies to an agency causing unwilling performance or avoidance of action."  *Lane*, 50 Ohio App.2d at 46.

Clearly here, the victim, while trying to avoid Nolan, was following a will not her own, as her "will" was to board a bus.  Her fleeing was an unwilling performance caused by Nolan's persistence that she enter into his vehicle.  Since the Ohio statute allows force to be established by proving violence, compulsion <u>or</u> constraint, in the disjunctive, any one of them would support the conviction.  There was sufficient evidence for a reasonable jury to find "force."

While Nolan's legal analysis focuses almost exclusively on the issue of force, he also raises, without the benefit of citations, the lack of proof regarding the element of creating a substantial risk of serious harm to the victim.  The Court notes also that Respondent did not address this argument.

The trial court read the following jury instruction on the definition of  "substantial risk" and "serious physical harm," which was taken directly from Ohio Jury Instructions:

> Substantial risk means a strong possibility, as contrasted with a remote or even a significant possibility, that a certain result may occur or that certain circumstances may exist.
> Now, serious physical harm to persons means any of the following: Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment; any physical harm which carries a substantial risk of death; any physical harm which involves some permanent incapacity, whether partial or total, or which involves some temporary, substantial incapacity; any physical harm which involves some permanent disfigurement, or which involves some temporary, serious disfigurement; and any physical harm that involves acute pain of such durations as to result in substantial suffering, or which involves any degree of prolonged or intractable pain.

(Resp. Exh. 9 at 382-383.)

It is important to be mindful that Nolan was convicted of attempted kidnapping.  Criminal attempt occurs when a person performs an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of a crime.  *State of Ohio v.*

-11-

*Jackson*, 1997 WL 764760, Case No. 72014, \*2 (8th Dist Ohio Dec. 1997) (*citing State v. Brooks*, 44 Ohio St.3d 185 (1989).  To constitute a substantial step, the defendant's conduct must be strongly corroborative of his criminal purpose.  *Jackson* at \*2.  Nolan attempted to lure the victim, a teenage girl, into his vehicle in the early morning hours when no others were in the area.  He then briefly chased her when she refused to comply.  In this context, had Nolan been successful in forcing the victim against her will into his vehicle, the substantial risk of serious harm would have clearly existed.  The jury heard all the testimony and reasonably inferred that Nolan's conduct towards the victim, if successful, would have met all the elements of kidnapping.  This Court cannot conclude from the record that the jury lost its way.  There was sufficient evidence for a rational trier of fact to have found all the essential elements of the crime.

**B.  Ground 2 - Nolan's warrantless arrest violated his due process rights and his subsequent identification should have been suppressed.**

Nolan alleges, as he did in the state court, that his due process rights under the Fourth Amendment were violated when he was illegally arrested.  Furthermore, he argues that any evidence derived therefrom, including his identification in a lineup, should have been suppressed.

### 1. State Court Adjudication

As to Ground Two, the state appellate court record states:

> In this matter, the officers discovered a vehicle which matched the vehicle driven by the assailant, and defendant admitted that it was his. The record reveals a particularized and objective basis for suspecting defendant of criminal activity and this evidence was therefore sufficient to establish probable cause under the statute. *Cf. State v. Vance* (May 11, 1987) Clark App. No. 2246; *State v. Huston* (Jan. 2, 1986), Lake App. No. 11-033.

(Resp. Exh. 1 at Paragraph 29.)

### 2. Federal Standard

The U.S. Supreme Court makes clear in *Payton v. New York*, 445 U.S. 573 (1980) that police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home.  Although certain seizures may be justified on something less

than probable cause, *see, e.g., Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), [U.S. Supreme Court has] never "sustained against Fourth Amendment challenge the involuntary removal of a suspect from his home to a police station and his detention there for investigative purposes ... absent probable cause or judicial authorization." *Kaupp v. Texas*, 538 U.S. 626, 630 (2003) (*citing Hayes v. Florida*, 470 U.S. 811, 815, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985)); *cf. Payton v. New York*, 445 U.S. 573, 589-590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *compare Florida v. Royer*, 460 U.S. 491, 499, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion) ("[The police] may [not] seek to verify [mere] suspicions by means that approach the conditions of arrest"), *with United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). ("[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause") (*quoting Terry* at 30.)

The Sixth Circuit, as well as other circuits, have recognized an investigative technique at the home of a suspect or an individual with information about an investigation known as "knock and talk."[4]  A "knock and talk" takes place when an officer of the law knocks on the door of a suspect.  *U.S. v. Thomas*, 430 F.3d 274, 277 (6th Cir. 2005)(*rehg and rehg en banc denied,* Feb. 28, 2006).  Any resulting discussion with a suspect does not implicate the Fourth Amendment. *Id.  See, e.g., United States v. Chambers*, 395 F.3d 563, 568 n. 2 (6th Cir. 2005) ("Courts generally have upheld [the knock and talk] investigative procedure as a legitimate effort to obtain a suspect's consent to search."); *Ewolski v. City of Brunswick*, 287 F.3d 492, 504-05 (6th

---

[4]The Supreme Court has not yet ruled on "knock and talk" cases.  Certiorari was denied in five cases in 2007, including *U.S. v. Thomas*, *supra*., *People v. Patterson*, No.A111868, 2006 WL 3335126 (Cal.App. Nov. 17, 2006), *cert. denied*, 128 S.Ct. 115 (2007) (appellate court affirmed district court denial of motion to suppress); *Henderson v. Johnson*, 203 Fed.Appx. 521 (4th Cir. 2006), *cert. denied*, 128 S.Ct. 110, (2007) (habeas petition regarding consent to search during "knock and talk"); *Krause v. Commonwealth*, 206 S.W.3d 922 (Ky. 2006), *cert. denied*, 127 S.Ct. 2975 (2007) (Supreme Court of Kentucky found consent to search following "knock and talk" was coerced and therefore not voluntary); *Robinson v. Virginia*, 273 Va. 26 (2007), *cert. denied*, 127 S.Ct. 2442 (2007) (Supreme Court of Virginia affirmed conviction based on "knock and talk" evidence).

Cir. 2002) (concluding that it was reasonable to approach a suspect's home to attempt to learn more through consensual questioning); *Nash v. United States*, 117 Fed.Appx. 992, 2004 WL 2912796, at *1 (6th Cir. Dec.16, 2004) (noting that this court has "explicitly upheld the legitimacy of doorstep investigatory interviews"); *United States v. Jones*, 239 F.3d 716, 720 (5th Cir. 2001) ("Federal courts have recognized the 'knock and talk' strategy as a reasonable investigative tool when officers seek to gain an occupant's consent to search or when officers reasonably suspect criminal activity."); *United States v. Cormier*, 220 F.3d 1103, 1109 (9th Cir. 2000) (holding that "no suspicion needed to be shown in order to justify the 'knock and talk'"); *United States v. Jerez*, 108 F.3d 684, 691-92 (7th Cir.1997) (recognizing that a knock and talk is ordinarily consensual unless coercive circumstances exist); *United States v. Titemore*, 335 F.Supp.2d 502, 505 (D.Vt. 2004) ("Under the rule permitting knock and talk visits, no Fourth Amendment search occurs when police officers who enter private property restrict their movements to those areas generally made accessible to visitors.") (quotation omitted).

In *U.S. v. Thomas*, 430 F.3d at 277, the Sixth Circuit reversed the district court's grant of a motion to suppress "knock and talk" evidence.  The *Thomas* Court held that the police officers' conduct outside the entry to defendant's home did not rise to the level of an impermissible constructive entry into the home.  Two officers knocked on Thomas' door.  When he came to the door, an officer told him that investigators wanted to talk to him and asked him to come out of the residence.  When he did so, he was arrested.  *Id*.

Moreover, "[t]he usual rule is that a police officer may arrest without warrant one believed by the officer upon reasonable cause to have been guilty of a felony. . . ."  *McCray v. Metrish*, 232 Fed.Appx. 469, 480, 2007 WL 1376342, Case No.05-1902,(6th Cir. 2007) (*quoting Carroll v. United States*, 267 U.S. 132, 156 (1925)).  To determine whether probable cause existed, the court should ask whether at the time of the arrest the officer knew of facts and circumstances "sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense."  *Id*. (*quoting Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

### 3. Analysis

In the instant case, the state appellate court held that the record revealed a "particularized

-14-

and objective basis for suspecting defendant of criminal activity and this evidence was . . . sufficient to establish probable cause. . . ." (Resp. Exh. 1 at ¶ 29.)  Officer Tucker, the arresting officer, testified that he received a call from Cleveland dispatch to respond to an address and look for a suspicious automobile matching the description of the vehicle used in the offense, a black Jeep Cherokee, with tinted windows and white lettering and numbering.  (Resp. Exh. 8 at 190-191.)  The suspect was described by the victim as being a black male, approximately 5'11" tall, weighing 250 pounds, dark complected, bald, with facial hair and wearing a brown jacket.  (*Id*. at 191.)  In response to a tip, the officer located the black Cherokee with tinted windows and white lettering and numbering as he drove down the street.  (*Id*. at 193.)  He then approached the house and knocked on the door.  (*Id*. at 194.)  A female responded and he questioned her about who owned the vehicle.  Nolan then came to the door and acknowledged that he owned the vehicle.  (*Id.*)  After the officer concluded that both the vehicle and Nolan matched the victim's description, the officer asked Nolan if he would step outside to answer some questions.  (*Id.* at 195.)  After Nolan complied, the officer placed him under arrest.  (*Id*. at 195-196.)

Petitioner relies on three cases in which arrests were found to have violated the Fourth Amendment:  *Kaupp v. Texas*, 538 U.S. 626 (2003); *Dunaway v. New York*, 442 U.S. 200 (1979) and *Kirk v. Louisiana*, 536 U.S. 635 (2002).  However, they are distinguishable from the instant case.  *Kaupp* and *Dunaway* can be distinguished in that at the time the subjects were taken into custody, there was no probable cause to do so.  *Kaupp*, 538 U.S. at 630, *Dunaway*, 442 U.S. 207.  *Kirk* is also distinguishable.  There, the officers entered defendant's apartment without a warrant and without exigent circumstances.  *Kirk*, 536 U.S. 636.  The Court held that the arrest and search violated the Fourth Amendment.  *Id.* at 638.

Here, as described above, the officer never entered Nolan's house.  When asked by the officer, Nolan voluntarily stepped out of the house and was subsequently placed under arrest.  Probable cause existed at the time of the arrest as the officer had sufficient information to warrant a prudent man in believing Nolan had committed the offense being investigated.  In *McCray v. Metrish*, 232 Fed.Appx. at 477, the Court held that a police officer had probable cause to arrest the defendant for murder under circumstances strikingly similar to those in the

-15-

case at bar.  The arrest was made based upon a physical description of the suspect and the description of his automobile, which had very distinctive wheels.[5]  The police saw an automobile with such wheels parked outside a house where they were told the suspect could be found.  They waited until McCray walked out of the residence, saw that he fit the description, ascertained that the automobile belonged to the him, and made the arrest.  *Id*.

The state court finding Nolan's arrest lawful was neither an objectively unreasonable application of clearly established Federal law, nor was it based on an unreasonable determination of facts in light of the evidence.

### 4.  Identification of Nolan

Nolan does not challenge his lineup identification as suggestive, but only as the fruit of an  illegal arrest.  Since his arrest was lawful, no issue remains as to the lineup identification.

### C.  Ground Three - Right to a Public Trial

In Ground Three, Nolan asserts he was denied his Sixth Amendment right to be present at all court proceedings and his right to a public trial when the court excluded him from a *voir dire* examination of the victim in chambers.  He argues also that he was denied his right to confront an adverse witness.

### 1.  State Court Adjudication

The appellate court rejected these claims by concluding that:

A.  Public Trial

* * *

 The violation of the right to a public trial is a structural error. It is not subjected to harmless-error analysis. *Waller v. Georgia* (1984), 467 U.S. 39, 49-50, 104 S.Ct. 2210, 81 L.Ed.2d 31.

However, the right to a public trial is not absolute, and in some instances must yield to other interests, such as those essential to the administration of justice. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038. A trial judge has authority to exercise control over the proceedings. Id. In *Waller*, the court held that in order to justify closure of a hearing in a criminal case, "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect

---

[5]In *McCray*, the description of the suspect did not perfectly match the defendant.

-16-

that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." 467 U.S. at 48, 104 S.Ct. 2210, 81 L.Ed.2d 31.

The *Waller* Court held that a suppression hearing was improperly closed. The remedy, however, was not a new trial, but a new suppression hearing. Where, however, a new hearing will not materially change the position of the parties, there is no need for either a new hearing or a new trial. *State v. Bethel*, 110 Ohio St.3d 416, 2006-Ohio-4853, 854 N.E.2d 150, citing Waller, 467 U.S. at 49, 104 S.Ct. 2210, 81 L.Ed.2d 31. In such instances, a new hearing would be an empty formality; a new trial would be a "windfall." *Id*.

Here, the prosecuting attorney requested closure of the voir dire hearing because Martin became frightened and fled the line up after observing defendant, who stopped and tried to look through the glass at the witness. The police officers testified in court and in the presence of defendant but the trial court adjourned the proceedings in order for Martin to testify in chambers and outside of the presence of defendant. The trial court held that the action was necessary "in order to accommodate the potential intimidation of the witness and the balance of the defendant's right to confrontation, which this is simply a hearing and not a trial." The trial court then instructed that defendant had 30 days in which to file a motion to suppress the identification but he did not do so. Moreover, later at trial, Martin did identify defendant in open court, with defendant present and she again testified to seeing defendant at the bus stop and to identifying him in the line up. We therefore find that the closure did not affect the fairness, integrity, or public reputation of the trial, *Cf. State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, and there is therefore no reason to suspect that a new voir dire hearing would materially change the position of the parties. We find the foregoing sufficient to meet the guidelines set forth in *Waller*, supra.

B. Exclusion of Defendant

As to the exclusion of defendant, we note that a defendant "has a fundamental right to be present at all critical stages of his criminal trial." *State v. Hill* (1995), 73 Ohio St.3d 433, 444, 653 N.E.2d 271, 281. However, it is well established that a defendant's right to be present at trial is not absolute. *State v. White*, 82 Ohio St.3d 16, 1998-Ohio-363, 693 N.E.2d 772. Prejudicial error exists only where "a fair and just hearing [is] thwarted by [defendant's] absence." Id., *quoting Snyder v. Massachusetts* (1934), 291 U.S. 97, 108, 54 S.Ct. 330, 333, 78 L.Ed. 674, 679.

* * *

We further note that in *Kentucky v. Stincer* (1987), 482 U.S. 730, 746, 107 S.Ct. 2658, 96 L.Ed.2d 631, the court found no due process or Confrontation Clause violation when an accused was excluded from a hearing on the competency of two child witnesses. The Court stated that where the hearing focuses upon substantive testimony of defendant's guilt, then the hearing bears a substantial relationship to the defendant's opportunity to defend and the court must balance the defendant's role in assisting in his defense against the risk of identifiable and substantial injury to the specific child witness.

Later, in *Maryland v. Craig* (1990), 497 U.S. 836, 862, 110 S.Ct. 3157, 111 L.Ed.2d 666 the Court upheld the use of testimony via one-way closed circuit television where the procedure was required to protect the child from trauma due to testifying in presence of the accused. The Court held that face-to-face

-17-

confrontation is not an absolute constitutional requirement; it may be abridged where there is a case-specific finding of necessity. The Court additionally explained:

"Indeed, where face-to-face confrontation causes significant emotional distress in a child witness, there is evidence that such confrontation would in fact disserve the Confrontation Clause's truth-seeking goal. *See, e.g., Coy, supra*, 487 U.S. at 1032 (BLACKMUN, J., dissenting) (face-to-face confrontation "may so overwhelm the child as to prevent the possibility of effective testimony, thereby undermining the truth-finding function of the trial itself"); Brief for American Psychological Association as Amicus Curiae 18-24; *State v. Sheppard*, 197 N.J.Super. 411, 416, 484 A.2d 1330, 1332 (1984)[.]"

Moreover, "The presence of [defendant's] attorneys has been held to constitute a 'most obvious barrier to prejudice' in such instances." *State v. Cannon* (Dec. 29, 1996), Summit App. Nos. 17549 & 17532, *quoting State v. Williams* (1983), 6 Ohio St.3d 281, 286, 452 N.E.2d 1323 and *Henderson v. Lane* (7th Cir.1980), 613 F.2d 175, 179.

Applying the foregoing to this matter, we conclude substantive evidence of defendant's guilt was introduced in connection with the *voir dire* identification hearing. However, balancing defendant's role in assisting in his defense against the risk of identifiable and substantial injury to the specific child witness, we cannot say that the trial court committed prejudicial error. The record indicates that defendant did not promptly exit the line up but stayed behind and tried looking through the glass. Martin fled in tears because she feared he could see her. The police officers testified in court and in the presence of defendant but the trial court adjourned the proceedings in order for Martin to testify in chambers and outside of the presence of defendant. Further, Martin did identify defendant later in open court, with defendant present, and she again testified to seeing defendant at the bus stop and to identifying him in the line up. Accordingly, we find that the exclusion of defendant from a portion of the proceedings did not render them unfair or unjust.

(Resp. Exh. 1 at Paragraphs 34-38, 41-45.)

### 2. Federal Standard

The Sixth Amendment guarantees a criminal defendant a public trial and the right "to be confronted with the witnesses against him."  U.S. Const. amend. VI.

However, the right to a public trial is not absolute.  In *Waller v. Georgia*, 467 U.S. 39, 48 (1984), the Supreme Court held that the right to a public trial applied to suppression hearings and also set forth considerations that must be made before any part of a trial or hearing can be properly closed.  *Waller* set forth a four-prong test:  "[1] the party seeking to close the hearing . . . advance[s] an overriding interest that is likely to be prejudiced, [2] the closure . . . [is] no broader than necessary to protect that interest, [3] the trial court . . . consider[s] reasonable alternatives to closing the proceeding, and [4] [the trial court] . . . make[s] findings adequate to

-18-

support the closure." *Id*. at 48.  *Waller* also held that a violation of the public trial right at a suppression hearing does not necessarily require that a new trial be granted.  The test is whether or not a new suppression hearing would have the same result as the constitutionally defective one.  *Id*. at 50.

Courts, applying *Waller*, have held that a defendant's Sixth Amendment right to a public trial was not violated when a courtroom was closed during the testimony of a witness, and such closure was justified by the need to protect the witness from emotional trauma.  *See e.g.*, *Bell v. Jarvis*, 236 F.3d 149 (4th Cir. 2000), *cert denied* 534 U.S. 830 (2001); *Fayerweather v. Moran*, 749 F.Supp. 43 (D.R.I. 1990); *U.S. ex rel. Morgan v. Lane*, 705 F.Supp. 410 (N.D. Ill. 1989).

Furthermore courts have taken into consideration the extent of the closure, such as the duration of the closure and the "importance of the testimony rendered while the courtroom was closed."  *Brown v. Kuhlmann*, 142 F.3d 529, 538 (2d Cir. 1998).  The Supreme Court in *Arizona v. Fulminante*, 499 U.S. 279 (1991), *rehg. denied* (1991), distinguished between "errors of sufficient magnitude or significance that they call into question the validity of the proceeding and are therefore deemed structural, and trivial violations of the same rights which are not."  *Yarborough v. Keane*, 101 F.3d 894, 897 (2d Cir. 1996).  For example, "*Fulminante* lists the 'total deprivation of the right to counsel' as a structural error, 499 U.S. at 309 (*citing Gideon*), but at the same time notes that a less significant denial of the right to counsel (at a preliminary hearing) has been held to be subject to harmless error review." 499 U.S. at 307 (*citing Coleman v. Alabama*, 399 U.S. 1 (1970)).

In order to determine whether a particular error is structural, courts must consider not only the type of right violated, but also the "particular nature, context and significance of the violation" *Yarborough*, 101 F.3d at 897.  In *Rushen v. Spain*, 464 U.S. 114 (1983), the Supreme Court addressed the issue of whether a structural error occurred when a judge communicated with a juror during trial without counsel and defendant present.   The Court held that the trial judge's *ex parte* communication with a juror was harmless error.  *Id*. at 117-19.  The Court observed that "[t]hese rights, as with most constitutional rights, are subject to harmless-error analysis, . . . unless the deprivation, by its very nature, cannot be harmless."  Id. at 118, n. 2

(citations omitted.).  The Court warned that suggesting an *ex parte* communication "can never be harmless error ignores [the] day-to-day realities of courtroom life and undermines society's interest in the administration of criminal justice."  *Id.* at 119.

Neither is the right of confrontation absolute.  "In sum, our precedents establish that the Confrontation Clause reflects a preference for face-to-face confrontation at trial, a preference that must occasionally give way to considerations of public policy and the necessities of the case." *Maryland v. Craig*, 497 U.S. 836, 849 (1990) (internal quotations and citations omitted). The Confrontation Clause, therefore, requires courts to balance the defendant's rights and society's interests. "[A] defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Danner v. Motley*, 448 F.3d 372 (6th Cir. 2006) (*quoting Craig* at 850.) When a witness is a child, a trial court must find: "1) the procedure is necessary for the child to testify in a complete and truthful manner; 2) the child witness would be traumatized specifically by the presence of the defendant; and 3) the emotional distress the child witness would endure as a result of testifying is more than *de minimis*, *i.e.* mere nervousness or reluctance to testify." *Id.* at 377.

In *United States v. Gagnon*, 470 U.S. 522 (1985), the Court held that:

[a] criminal defendant has the right to be present at any proceeding whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge. . . . [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.

*Id.* at 526 (*quoting Snyder v. Massachusetts*, 291 U.S. 97, 105-06 (1934)) (internal quotation marks omitted); *see also, Kentucky v. Stincer*, 482 U.S. 730, 745 (1987).

### 3.  Analysis

On October 14, 2005, the trial court held a hearing in response to Nolan's motion to *voir dire* the identification witnesses.  (Resp. Exh. 6)  This hearing was requested by the defendant to determine whether the lineup identification was properly conducted by the police, and, if not,

-20-

whether a motion to suppress should be filed.  Two police officers, the lead detective, and the victim testified at the hearing.  After the two police officers who conducted the lineup testified in open court, the trial judge closed the hearing for the victim's testimony.  The victim then testified in chambers with defense counsel present, but Nolan excluded.  A third officer, the lead detective assigned to the case, was examined at a later date.[6]  (Resp. Exh. 7.)  The trial court held that the action was necessary "in order to accommodate the potential intimidation of the witness and the balance of the defendant's right to confrontation, which this is simply a hearing and not a trial."  (Resp. Exh. 6 at 50.)  At the conclusion of the hearing, the trial court allowed the defendant 30 days in which to file a motion to suppress the identification.  (Resp. Exh. 7 at 39.)  He did not do so.

The state appellate court applied *Waller* and found that the trial court stated its reasons for closure of the hearing on the record, that defendant had an opportunity to file a motion to suppress but did not do so, and the victim later identified Nolan at trial in open court.  While it relied on *Waller*, the court did not specifically address the four prongs of the test to determine if the closure was proper.  However, it concluded that the closure did not affect the fairness, integrity, or public reputation of the trial.

After reviewing the record, this Court finds that, although much of the discussion apparently occurred off the record, the trial court did not close the hearing until testimony had been offered by two Cleveland Police officers.  Part of their testimony verifies the intimidation of the victim at the lineup:  that she looked very frightened (Resp. Exh. 6, Tr. 41, lines 5-6.); that she ran from the room upon seeing Nolan, (*Id*., Tr. at 22, line 20; 24, lines 5-10.); and that Nolan lingered afterward appearing to "stare a hole through the window" to where the victim would be located while making the identification.  (*Id*. at Tr. 43, line 23; 44, lines 1-7.)  Before the trial judge made the final order, he referenced that testimony and the potential of further intimidation of the witness.

---

[6]Detective Moore, the lead detective on the case was not available for the *voir dire* hearing held on October 14, 2005.  The Court agreed to continue that portion of the hearing until December 20, 2005 in order to accommodate Det. Moore's testimony. (Resp. Exh. 7.)

The first prong was satisfied as the protection of a minor victim of an alleged attempted kidnapping is a compelling State interest justifying closure.  The second prong was met because the court limited closure to the victim's testimony at the hearing while all other witnesses testified in open court.  The third prong was satisfied as the court found the most appropriate means to balance the competing goals of a public trial and the victim's interests was by closing the hearing to protect the victim from further emotional trauma and intimidating.  Defense counsel made only a token objection without argument and offered no alternatives to the court.  Lastly, the trial court put its findings on the record when it stated that the action was necessary "in order to accommodate the potential intimidation of the witness and the balance of the defendant's right to confrontation, which this is simply a hearing and not a trial."  (Resp. Exh. 1, ¶ 37.)

The Court is also mindful of what this was not.  The proceeding was neither a trial nor a suppression hearing.  This proceeding was in response to Nolan's motion to *voir dire* the identification witness to determine whether a motion to suppress the lineup identification would be in order.  The trial court gave Nolan thirty days to file such a motion, but he did not do so.  Nolan to this day does not challenge the lineup as being suggestive or improperly conducted, outside of his assertion that it was the product of an illegal arrest.  If it was error to close the *voir dire* hearing, and this Court makes no such conclusion, it had no substantial or injurious effect or influence on Nolan's case.  Had Nolan concluded that it did, he possessed the remedy, simply asking for a suppression hearing.

Furthermore, if Nolan's petition were granted as to this claim, his remedy would be for the trial court to hold a new *voir dire* hearing.  *See Waller*, 467 U.S. at 50; *Brown*, 142 F.3d at 539-544.  As the victim subsequently testified in open court at trial and Nolan had the opportunity to confront her, a new hearing would serve little purpose.  While it would have been better for the trial court to make detailed findings justifying closure, *Waller* requires only that the findings be specific enough that a reviewing court can determine whether the hearing was properly closed.  The state appellate court made adequate findings as to the closed hearing, and the conclusion it reached was not an objectively unreasonable application of federal law.

-22-

Nolan also challenges his exclusion from the victim's testimony at the pretrial *voir dire* hearing held on October 14, 2005.  Subsequently, at trial held on March 13, 2006, the victim, in open court identified Nolan.  She also testified to seeing Nolan at the location of the incident and to identifying him in the police lineup.  Nolan then had the opportunity to fully confront the witness, face-to-face.  *See Maryland ,* 497 U.S. at  849; *Kentucky v. Stincer,* 482 U.S. 730, 745 (1987); *Danner v. Motley*, 448 F.3d at 377.  Thus, the outcome of the trial was not affected by the earlier *voir dire* testimony of the child during the closed hearing.  Further, had Nolan requested a suppression hearing, one could only speculate whether the court would have ordered the accuser to testify in a closed proceeding.  Clearly, that did not happen at trial.  The state court's holding that excluding Nolan did not render the proceeding unfair or unjust was a reasonable application of federal law.

In conclusion, this is not a case in which Nolan's absence undermined the fundamental integrity of the criminal process.  The portion of the proceeding held in his absence was of minimal importance as Nolan subsequently had the opportunity to confront the witness in open court during the trial.  Nolan's absence from a portion of the pretrial hearing does not call into question the fundamental fairness of the trial.  It did not "affect[ ] the [structural] framework within which the trial proceed[ed]."  *Fulminante*, 499 U.S. at 310.  It involved a "courtroom closure that was not substantial enough to undermine the values furthered by the public trial guarantee."  See *Brown* at 544.

### D.  Ground Four – Jury Instructions

In Ground Four, Nolan claims that his due process rights were violated when the trial court (a) gave an "on or about" instruction relating to the date of the offense, and (b) failed to give an alibi instruction despite alibi evidence being presented at trial through defense witness Alonzo Willis.[7]  (Resp. Exh. 9, Tr. 365-387, 421-430, 380-381.)

_____

[7]Respondent argued this claim was procedurally defaulted because an objection was not made at trial.  *See Osborne v. Ohio*, 495 U.S. 103, 124 (1990) (petitioner waives an alleged error by failing to make a contemporaneous objection at trial.) *See also Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir. 2004), *cert denied*, 544 U.S. 1003 (2005).

## 1. State Court Adjudication

The state appellate court ruled on the issues of the "on or about" instruction and the lack of an alibi jury instruction as follows:

Defendant's fourth assignment of error states:

"Defendant was denied due process of law when the court gave an 'on or about' instruction when the defendant presented alibi evidence."

In *State v. Bell*, Cuyahoga App. 87769, 2006-Ohio-6592, this court rejected this contention and stated:

When instructing the jury, the trial court gave the following instruction:

The date that the offenses in this indictment allegedly occurred have been previously stated. It is not necessary that the State prove that the offenses were committed on the exact day as charged in the indictment. It is sufficient to prove that the offense took place on a date reasonably near the date claimed.

This instruction is also a standard instruction in Ohio. The jury heard evidence from the State with regard to when the offenses occurred. The jury also heard evidence from *Bell* about his alibi. Accordingly, the jury was free to weigh the evidence and this instruction did not result in any harm to Bell's case. The trial court did not err when it gave this instruction.

In accordance with the foregoing, we likewise reject this contention herein.

Defendant's fifth assignment of error states:

Defendant was denied due process of law when the court failed to give an alibi instruction.

Defendant did not request an alibi instruction at trial, so we must review the court's failure to give an instruction for plain error.

In *State v. McClain*, Cuyahoga App. No. 77740, 2002-Ohio-2349, this court noted that it follows the "reasoning as set forth in [*State v. Sims* (1982), 3 Ohio App.3d 331, 335, 445 N.E.2d 245 ] and has held that" where the record supports a finding of guilt beyond a reasonable doubt and appellant cannot show that the result would have been different had the jury been instructed on the defense of alibi, the failure to instruct is not reversible error. *State v. Griffin*, (Aug. 25, 1988), Cuyahoga App. No 54238; *State v. Wylie* (Oct. 25, 1984), Cuyahoga App. No. 48012, *State v. Mitchell* (1989), 60 Ohio App.3d 106, 108, 574 N.E.2d 573. In *Mitchell*, as here, the defendant filed a notice of alibi and relied upon it for his defense. Moreover, *Mitchell* requested an alibi instruction and objected to its denial, unlike the circumstances in the matter sub judice. Even so, the *Mitchell* court found that it was not unreasonable for the jury to disbelieve the alibi and find the defendant guilty beyond a reasonable doubt and held "whether or not an alibi instruction is requested, the failure to give such an instruction is harmless

error when the evidence clearly supports a guilty verdict beyond a reasonable doubt ." *Id*. at 109."

In this matter, we find no plain error, as the evidence clearly supports a guilty verdict beyond a reasonable doubt since Martin separately identified defendant and his vehicle from the incident and it was not unreasonable for the jury to disbelieve the alibi provided by Willis.

(Resp. Exh. 1 at Paragraphs 47-57.)

## 2. Federal Standard

In *Middleton v. McNeal*, 541 U.S. 433 (2004), the Court set forth the standard to be applied in a habeas claim when a petitioner is asserting a due process violation involving a jury instruction:

In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement. *See Sandstrom v. Montana*, 442 U.S. 510, 520-521, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation. The question is " 'whether the ailing instruction ... so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (*quoting Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). " '[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.' " *Boyde v. California*, 494 U.S. 370, 378, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990) (*quoting Cupp, supra*, at 146-147, 94 S.Ct. 396). If the charge as a whole is ambiguous, the question is whether there is a " 'reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Estelle, supra*, at 72, 112 S.Ct. 475 (*quoting Boyde, supra*, at 380, 110 S.Ct. 1190).I

*Middleton*, 541 U.S. at 437.

In order to warrant habeas relief, a petitioner must demonstrate that the jury instructions were *both* erroneous and, taken as a whole, so infirm that the entire trial was rendered fundamentally unfair.  *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991), *citing Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977).  The category of infractions that violate "fundamental fairness" is exceedingly narrow, as the Due Process Clause has limited application beyond the specific guarantees enumerated in the Bill of Rights.  *Id*.  The Supreme Court noted in *Estelle*, 502 U.S. at 72-73, that "we also bear in mind our previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly,'" (*quoting Dowling v. United States*, 493 U.S. 342, 352 (1990)).  Instructional

-25-

errors of state law will rarely form the basis for federal habeas corpus relief.  *Gilmore v. Taylor*, 508 U.S. 333, 344 (1993); *Estelle*, 502 U.S. at 71-72.

Errors in jury instructions are generally not cognizable in federal habeas corpus unless they deprive petitioner of a fundamentally fair trial.  *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *see also Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *Thomas v. Arn*, 704 F.2d 865, 868-69 (6th Cir. 1983).  A habeas petitioner challenging jury instructions must establish that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).  An omission or an incomplete instruction is less likely to be prejudicial than a misstatement of law.  *Henderson*, 431 U.S. at 155.

### 3.  Analysis

Nolan relies on *United States v. Neuroth*, 809 F.2d 339, 341-42 (6th Cir. 1987) in regard to the use of an "on or about" instruction.  The *Neuroth* Court concluded that the "on or about" charge should be evaluated on a case-by-case basis, subject to the harmless error analysis; "... when evidence of guilt is overwhelming, an "on or about" charge could be harmless error, even when all the proof is directed to a specific date . . .."  *Neuroth* at 342.  Furthermore, the *Neuroth* Court held that "there should be no *per se* prohibition on "on or about" jury instructions because an alibi defense is provided for a specific date."  *Neuroth* at 340.

Regarding alibi, Nolan relies on Ohio case law that states "a trial court has a statutory duty, pursuant to R.C. 2945.11, to charge the jury on alibi."  *State v. Frost*, 164 Ohio App.3d 61, 70 (2005).

> "The general rule in Ohio regarding special instructions in a criminal case is that if the requested instructions to the jury are correct, pertinent and timely presented, they must be included, at least in substance, in the general charge." *State v. Boulabeiz* (1994), 92 Ohio App.3d 238, 241, 634 N.E.2d 700; *State v. McCarthy* (1992), 65 Ohio St.3d 589, 593, 605 N.E.2d 911, *citing Cincinnati v. Epperson* (1969), 20 Ohio St.2d 59, 49 O.O.2d 342, 253 N.E.2d 785. Where a defendant files a timely notice of alibi, presents evidence to support the contention, and relies on alibi as his sole defense, the trial court has a statutory duty, pursuant to R.C. 2945.11, to charge the jury on alibi. *State v. McDade* (Jan. 11, 1995), Montgomery App. No. 14339, 1995 WL 9453. However, the trial court is not required to give such instruction in the exact form requested by the defendant and may, instead, frame the instructions in the court's own words. *State v. Sneed* (1992), 63 Ohio St.3d 3, 584 N.E.2d 1160; *State v. Haley (July* 25, 1997), Greene

App. No. 96-CA-50, 1997 WL 435692. Likewise, a requested special instruction need not be given when the law it expresses is adequately presented by a general charge.

*Id*.

Respondent argues that no due process violation occurred.  The "on or about" instruction was a proper application of Ohio law which should be respected by this habeas court.  Further, the "on or about" instruction did not render the resulting conviction to be a violation of due process.  The jury heard testimony as to the date of the offense, and, based on the totality of the evidence, could reasonably find that Nolan committed the offense.

Furthermore, Respondent points to the testimony of the alibi witness, Willis.  He testified that Nolan left an all-night contractors' party between 8:30 and 9:00 a.m. on the date of the offense as set forth in the indictment.  (Resp. Exh. 9, Tr. 308).  However, Respondent points out that of the 40-50 people attending, no one corroborated Willis' alibi testimony.  Also, Willis never contacted the police to share his alibi information.  After learning of the claimed alibi, the police unsuccessfully  attempted to contact Willis before the trial.

The standard alibi charge in Ohio states:

> The defendant claims that he was at some other place at the time the offense occurred. This is known as an alibi. The word "alibi" means elsewhere or a different place. If the evidence fails to establish that the defendant was elsewhere, such failure does not create an inference that the defendant was present at the time when and at the place where an offense may have been committed. If, after a consideration of the evidence of alibi along with all the evidence, you are not convinced beyond a reasonable doubt that the defendant was present at the time in question, you must return a verdict of not guilty.

Ohio Jury Instruction, § 411.03 (2006).

Ohio courts have held that "though a failure to instruct a jury on the defense of alibi is error even if not requested, it is plain error only if the instruction would have altered the outcome of the case or if its omission caused a manifest miscarriage of justice."  *State v. Mitchell*, 60 Ohio App.3d 106 (1989) (*citing State v. Sims*, 3 Ohio App.3d 331 (1982)).  The *Sims* Court reasoned that: "*** A trial court's instructions to the jury on alibi are little more than a reminder that evidence of alibi was introduced. * * * [I]f the defendant is found, beyond a reasonable

doubt, to have committed the crime, then the jury necessarily must have considered and disbelieved the evidence of alibi." *Id*. at 335.  Relying on these cases, the state appellate court found the "on or about" instruction proper and found no plain error in not including an alibi instruction.

Considering all the circumstances, the Court cannot say that the instructions as given rendered the trial fundamentally unfair.  In fact, the record reflects that Nolan's counsel placed so little weight on the alibi evidence that the only mention of it in his closing was in the context of questioning the quality of the police investigation.  The closing, almost exclusively, focused on the quality of the victim's identification of Nolan, attempting to show how unreliable it was. The evidence in support of the alleged alibi consisted solely of Willis' testimony.  The jury was free to weigh this testimony in the context of the trial court's explicit instruction that the burden of proof was on the prosecution.  (Exh. 9, Tr. at 376.)  Nolan has not established that the claimed errors so infected the entire trial that his due process rights were violated.

### E.  Ground Five – Ineffective Assistance of Counsel

In Ground Five, Nolan claims that his trial counsel was constitutionally ineffective in three ways: (a) when trial counsel failed to file a motion to suppress the warrantless arrest and the identification procedure; (b) when trial counsel failed to file a motion to suppress the identification of Nolan's vehicle by the victim because the identification procedure was unduly suggestive; and (c) when trial counsel failed to request an alibi instruction.  (Resp. Exh. 12.)[8]

### 1.  State court adjudication

As to the issue of ineffective assistance of counsel, the state appellate court, applying the *Strickland* standard, ruled as follows:

> *** With regard to the claims that counsel was ineffective for failing to file a
> motion to suppress the identification procedure, and failing to file a motion to

---

[8]Respondent argued that these subclaims were procedurally defaulted by not being fairly presented to the Ohio Supreme Court as an issue of federal law, as the only case law mentioned was *Strickland*, and the allegations of facts were not within the mainstream of pertinent constitutional law.

suppress based upon the unlawful arrest of defendant, we note that we have previously reviewed the underlying claims of error and rejected them. Accordingly, a claim of ineffective assistance of counsel based upon such claims must likewise fail. *See State v. Henderson* (1989), 39 Ohio St.3d. 33, 528 N.E.2d 1237.

As to counsel's failure to seek suppression of Martin's identification of the vehicle, we note, after reviewing the entire record that there is no reasonable probability that the outcome of the trial would have been different had such a motion been filed. Therefore, defendant's claim of ineffective assistance of counsel in this regard must fail.

With regard to the third basis of ineffective assistance, we note that in *State v. Elko*, Cuyahoga App. No. 83641, 2004-Ohio-5209, this court concluded that counsel was not ineffective for failing to request such an instruction where the alibi was "weak at best." " Likewise, in this matter, the alibi was not strong as it was offered by Lorenzo Willis and the officers tried repeatedly to speak with Willis prior to trial but were unsuccessful.

(Resp. Exh. 1, Paragraphs 63-65.)

## 2. Federal Standard

To establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985). A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair. *Id*. To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that

-29-

the challenged conduct of a petitioner's counsel was a matter of strategy.  *Id.* at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

"Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove (1) that his Fourth Amendment claim is meritorious and (2) that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison,* 477 U.S. 365, 375 (1986); *McCray v. Metrish*,  232 Fed.Appx. 469, 480, 2007 WL 1376342, Case No. 05-1902 (6th Cir. 2007).

### 3. Analysis

The State Court of Appeals, applying the *Strickland* standard, ruled against Nolan on all his claims regarding ineffective assistance of counsel.  To grant relief, this Court must therefore find that such rulings were either contrary to or unreasonable applications of the law.

First, as to the motion to suppress challenging the arrest, this Court has previously determined that the state court finding Nolan's arrest to have been accomplished lawfully was not unreasonable or contrary to law.  Therefore, counsel's failure to challenge the arrest would not fall below acceptable standards of representation.  Second, there is no reason to believe the proceedings would have turned out differently if such a motion had been filed.  Consequently, Nolan has neither established the prejudice required by *Strickland*, nor met the requirements of *Kimmelman*.

The state appellate court applied the *Strickland* prejudice test to the identification of the vehicle.  Nolan gives this Court no meaningful argument as to how a motion challenging the identification of the vehicle would have created a reasonable probability that the outcome of the proceedings would have been different.  He simply argues that trial counsel was ineffective for not raising the alleged improper and suggestive procedures used when the victim first identified the vehicle by viewing a photograph.  Furthermore, Nolan argues that the victim's description of the vehicle was vague.   The state appellate court concluded that the identification of the vehicle was harmless.  Nolan does not cite any case law demonstrating otherwise.

Finally, Nolan contends that counsel's failure to request an alibi instruction constituted

-30-

ineffective assistance of counsel.  A review of trial counsel's closing argument reveals that he did not argue the alibi defense to the jury.  (Exh. 9, Tr. at 410.)  Rather, he relied upon the failure of the state to prove all the essential elements of the offense, the questionable credibility of the victim due to inconsistent statements, and the general unreliability of eyewitness identifications. Never once did he mention that Nolan claimed to be somewhere else at the time of the offense. The only mention of Lorenzo Willis, the alibi witness, was in the context of the quality of the police investigation. (*Id.*)  The failure to request an alibi could have been a strategic decision, where "the defendant's alibi was seriously undermined by evidence adduced at trial." *People v. Frye*, 210 A.D.2d 503 (N.Y.A.D. 1994) (internal citations omitted).  Furthermore, Nolan has not demonstrated the requisite prejudice to prevail on the second prong of the *Strickland* inquiry. There is no reasonable probability that the outcome would have been different had an instruction been requested and given.

The state appellate court's application of *Strickland* was neither contrary to nor an unreasonable application of federal law.  Petitioner's ineffective counsel claim should be denied.

### V.  Notice of New Authority

Lastly, on April 14, 2008, Nolan filed a notice of new authority – citing *State v. Chapple*, App. Case No. 22198 (2nd App.Dist., Montgomery Cty. Ohio, March 14, 2008).  There the state court of appeals ruled that the Ohio criminal child enticement statute, Ohio Rev. Code § 2905.05(A), was unconstitutional.[9]  Nolan was neither charged nor convicted under Ohio's child

---

[9]The version of the Ohio Rev. Code § 2905.05(A) in effect at the time of *Chapple* was held by the Montgomery County Court of Appeals to be substantially overbroad and unconstitutional on its face.  (*Id.* at § 17.)  Effective January 1, 2008, the Ohio legislature amended the statute to eliminate the overbreadth issue.  *See* Ohio Rev. Code § 2905.05(A),(B) (2008).

Currently, Ohio Rev. Code § 2905.05 states:

(A) No person, by any means and without privilege to do so, shall knowingly solicit, coax, entice, or lure any child under fourteen years of age to accompany the person in any manner, including entering into any vehicle or onto any vessel, whether or not the offender knows the age of the child, if both of the following apply:

(1) The actor does not have the express or implied permission of the parent, guardian, or other legal custodian of the child in undertaking the activity.

enticement statute.[10]  Furthermore, no argument has heretofore been advanced regarding this statute and it is of no consequence to this proceeding.

### VI.  Motion for Bond

Nolan filed a motion for bond (Doc. No. 9) requesting this Court to release him from prison pending the disposition of the instant petition.  The undersigned recommends the motion for bond be denied.

### VII.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends Nolan's petition be DENIED.

s/ Greg White
United States Magistrate Judge

Date:  August 28, 2008

**OBJECTIONS**

**Any objection to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See United States v. Walters, 638 F.2d 947 (6th Cir. 1981).  See also Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).**

---

(2) The actor is not a law enforcement officer, medic, firefighter, or other person who regularly provides emergency services, and is not an employee or agent of, or a volunteer acting under the direction of, any board of education, or the actor is any of such persons, but, at the time the actor undertakes the activity, the actor is not acting within the scope of the actor's lawful duties in that capacity.

(B) No person, with a sexual motivation, shall violate division (A) of this section.

Ohio Rev. Code § 2905.05 (2008).

[10]The victim, born in December 1988, was 16 years old at the time of the incident and thus the child enticement statute was not applicable, as the statute pertains to children under the age of 14.