## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **STEVE NOLAN** | : | **Case No.1:07CV3077** |
| **Petitioner,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| **CHRISTINE MONEY, WARDEN** | : | **MEMORANDUM & ORDER** |
| **Respondent.** | : | |

Before the Court is Petitioner Steve Nolan's ("Nolan") Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. 1.)  Nolan's Petition asserts five grounds for relief.  Pursuant to 28 U.S.C. § 636 and Local Rule 72.2, this case was automatically referred to Magistrate Judge Greg White for preparation of a Report and Recommendation ("R&R").  On December 20, 2007, Respondent filed her Answer/Return of Writ.  (Doc. 6.)  Nolan filed his Traverse on January 18, 2008. (Doc. 7.) On August 28, 2008, Magistrate Judge White issued a R&R recommending that the Court deny Nolan's Petition.  (Doc.11.)  Nolan timely filed objections to the R&R (Doc. 13), and Respondent did not respond to Nolan's objections.  Consequently, this case is ripe for adjudication. For the reasons articulated below, the Court **ADOPTS** the R&R except as **MODIFIED** with respect to Nolan's third ground for relief, and, accordingly, **DISMISSES** Nolan's Petition.

## I.     BACKGROUND

The R&R sets forth the procedural history of this case, and the factual background described in the opinion of the Ohio Court of Appeals.  (Doc. 11 at 1-4.)  Nolan does not challenge this description of the procedural history in his objections.  To the extent Nolan's objections challenge the factual background, as discussed below, his objections are not well-taken.  Accordingly, in the

interest of efficiency, the Court adopts the R&R's articulation of the relevant factual and procedural

background, and will only provide a brief summary for the purposes of this Order.

### A.     Factual History

On the morning of March 11, 2006, Stephanie Martin was waiting at the bus stop at Arbor

Road and St. Clair Avenue in Cleveland.  At approximately 7:30 a.m., a black Jeep Cherokee with

tinted windows, and white numbers and letters pulled into the parking lot behind the bus stop.  The

driver of the Cherokee asked Martin if he could talk to her, and Martin said no.  The driver repeated

the request.  He then said that he could put money into her pocket and told Martin to get into his

vehicle.  When Martin told the driver no, he got out of the vehicle and walked towards Martin,

moving to block her way.  Martin ran, and the man chased her briefly and again told her to get into

the car.  When Martin ran away from the bus stop toward her home, the driver returned to his car and

left the scene.  Martin ran home and told her mother about the incident.  In response, her mother

called the police.  Martin described the vehicle to the police and stated that the driver was 5' 11",

weighed approximately 250 pounds, had a dark complexion with a mustache and goatee, and was

wearing a brown jacket, blue cap, blue jeans and blue Timberland boots.

The case received media attention, and two days later the police received an anonymous tip

that a vehicle matching Martin's description was on Columbia Road.  Officer Jerry Tucker

responded to the tip.  In the driveway of a home on Columbia Road, Tucker saw a car matching the

description given by Martin.  Tucker approached the house and knocked on the door.  Initially a

woman answered the door.  Nolan soon came to the door, however, and admitted he owned the car

in the driveway.  After speaking with Nolan, Tucker thought that Nolan matched the description

given by Martin.  Accordingly, Tucker asked Nolan if he would step outside and answer a few

-2-

questions.  In response, Nolan voluntarily exited the house and was arrested by Tucker.

After Nolan was arrested, Martin was shown pictures of his vehicle, and she identified it as the vehicle driven by the man who chased her.  Lt. Gail Maxwell then conducted an identification line-up.  Maxwell selected five other men of similar height, weight, and appearance to participate in the line-up with Nolan.  The record indicates that, during the line-up, the victim looked very frightened, and she initially ran from the room after seeing Nolan.  After hesitating, Martin identified Nolan as the man who chased her.  At the conclusion of the line-up, Nolan lingered and appeared to stare through the glass to where the victim would have been standing during the identification.

Prior to trial, to determine whether he would file a motion to suppress the line-up identification, Nolan requested a voir dire of Martin and the three police officers who performed the line-up.  Initially, two of the officers testified in open court during the voir dire hearing.  When the officers finished, the Judge adjourned the hearing to his chambers for Martin's examination.  The Judge explained that he held this portion of the hearing outside of Nolan's presence out of concern that Martin would be intimidated by his presence.  Nolan's attorney, however, was present during Martin's examination.  After Martin testified, the hearing adjourned, and the last officer was examined in open court on a later date.  At the close of the hearing, the Judge informed Nolan that he had thirty days to file a motion to suppress the identification.  He never filed a motion to suppress the line-up identification.  At trial, Martin testified in open court and identified Nolan as the man who chased her.  *State v. Nolan*, No. 88111, 2007 WL 853217, at *1-2 (Ohio Ct. App. March 22, 2007).

## B.    Procedural History

On March 24, 2005, the Cuyahoga County Grand Jury charged Nolan with attempted

-3-

kidnaping in violation of Ohio Rev. Code §§ 2923.02, 2905.01. Nolan, represented by former counsel, pled not guilty. On March 13, 2006, a jury found Nolan guilty of attempted kidnaping. On April 24, 2006, the trial court sentenced Nolan to four years in prison.

On May 3, 2006, Nolan, represented by current counsel, filed a notice of appeal to the Eighth District Court of Appeals of Ohio ("state court of appeals"). He raised seven assignments of error: (1) defendant was denied due process of law when the court overruled his motions for judgment of acquittal; (2) defendant was denied due process of law when the court did not suppress evidence resulting from defendant's warrantless arrest and subsequent identification procedure; (3) defendant was denied his constitutional right to be present and his right to a public trial when the court conducted an examination of a witness in the court's chambers; (4) defendant was denied due process of law when the court gave an "on or about" instruction when defendant presented alibi evidence; (5) defendant was denied due process of law when the court failed to give an alibi instruction; (6) defendant was denied effective assistance of counsel; and (7) defendant was denied his Sixth and Fourteenth Amendment rights when the court based its sentence on facts found by the court and not alleged in the indictment nor found by a jury. (Doc. 6 at 4.) On March 22, 2007, the state court of appeals, in a written opinion, affirmed the trial court's finding of guilt, but vacated the sentence because Nolan's seventh assignment of error had merit. *Nolan*, 2007 WL 853217, at *9. The case was remanded for re-sentencing. *Id.*

On May 21, 2007, Nolan filed a timely notice of appeal and memorandum of jurisdiction in the Ohio Supreme Court, presenting six propositions of law: (1) a conviction violates due process of law when the prosecution fails to present evidence in support of all elements of the offense; (2) a defendant has been denied due process of law when the defendant was arrested at his home

-4-

without a warrant which resulted in a warrantless seizure of his vehicle and his subsequent identification; (3) a defendant has been denied his constitutional right to be present and his right to a public trial where the court conducts an examination of a witness in chambers; (4) a defendant has been denied due process of law when the court gives the jury an "on or about" instruction when defendant presents alibi evidence; (5) a defendant has been denied due process of law when the court fails to give an alibi instruction where the defendant has offered alibi evidence; and (6) a defendant has been denied effective assistance of counsel where, through errors and omissions, his right to a fair trial has been prejudiced. (Doc. 6 at 6-7.) On August 29, 2007, the Ohio Supreme Court denied leave and dismissed the appeal as not involving any substantial constitutional question.

On October 9, 2007, the trial court re-sentenced Nolan to the same four-year prison term it imposed prior to the state court of appeals remand.

### C.    Nolan's Grounds for Relief in his Petition

On October 9, 2007, Nolan filed a § 2254 federal habeas petition, presenting five grounds for relief:

**Ground One:** Fourteenth Amendment - "Petitioner's conviction violated due process of law as the prosecution failed to present evidence to support all of the elements of the offense of attempted kidnaping." (Doc. 1 at 4.)

**Ground Two:** Fourth and Fourteenth Amendment - "Petitioner was denied due process of law when he was arrested at his home without a warrant. As a result of his warrantless arrest and seizure of his vehicle an identification process was undertaken." (Doc. 1 at 4.)

**Ground Three:** Sixth Amendment - "Petitioner was denied his constitutional right to be present and his right to a public trial where the court conducted an examination of a witness in the court's chambers and excluded petitioner." (Doc. 1 at 5.)

**Ground Four:** Fourteenth Amendment - "Petitioner was denied due process of law when the court instructed the jury that it could convict on or about the offense [date] alleged in the indictment where petitioner had presented alibi evidence on [the] date claimed in the indictment. Moreover, petitioner was denied due process of law when the trial court failed

-5-

to give an alibi instruction where petitioner offered substantial alibi evidence." (Doc. 1 at 5.)

**Ground Five:** Sixth Amendment - "Petitioner was denied effective assistance of counsel because of errors and omissions by his counsel which resulted in substantial prejudice." (Doc. 1 at 5.)

## II.    LAW AND STANDARD OF REVIEW

Nolan filed his § 2254 Petition on October 9, 2007.  (Doc. 1.)  Therefore, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this Court's review of the petition. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998); *see also Woodford v. Garceau*, 538 U.S. 202, 210 (2003).[1]

### A.    Nolan's Petition is Not Time-Barred

First, as a procedural matter, the AEDPA requires that habeas petitions be filed within one year of the latest of four triggering dates set forth at 28 U.S.C. § 2244(d)(1).  In this case, it is undisputed that Nolan timely filed his Petition pursuant to 28 U.S.C. § 2244(d)(1)(A).[2]

### B.    Applicable Prerequisites to Habeas Relief

---

[1]  The AEDPA applies to petitions filed *after* the Act's April 26, 1996 effective date. *Barker v. Yukins*, 199 F.3d 867, 871 (6th Cir. 1999).

[2]  Section 2244(d)(1)(A) provides:

(d)(1)   A 1-year period of limitation shall apply to an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a state court. The limitation period shall run from the latest of –

        (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . .

28 U.S.C. § 2244(d)(1)(A).  The Ohio Supreme Court denied Nolan's petition for appeal on August 29, 2007 and he filed this Petition on October 9, 2007 -- *i.e.*, well within the one-year limitations period.  (*See* Doc. 6 at 7.)

In addition to the statute of limitations, there are two other prerequisites to habeas relief under the AEDPA.  First, state prisoners must ordinarily exhaust all available state court remedies prior to seeking habeas relief.  28 U.S.C. § 2254(b), (c); *Rhines v. Weber*, 544 U.S. 269, 274 (2005). Second, under the doctrine of procedural default, a habeas petitioner cannot ordinarily assert claims that were not properly submitted to the state court under its procedural rules and which are now barred by state procedural law.  *See Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). Despite these requirements, the Supreme Court has observed that federal courts are not required to address a procedural default issue before deciding against a petitioner on the merits.  *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).  The Sixth Circuit has approved this approach where the procedural default question is complicated and unnecessary to the court's determination of the case.  *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *Jackson v. Anderson*, 141 F. Supp. 2d 811, 826-27 (N.D. Ohio 2001).  In this case, the Magistrate Judge declined to address the procedural default issue[3] and, instead, proceeded to address the merits of Nolan's claim.  (Doc. 11 at 5.)  Neither Nolan nor Respondent has objected to the Magistrate Judge's failure to address Respondent's claims of procedural default, so this Court will not revisit that conclusion.

### C.    Standard for Merit Review

When the petitioner has satisfied the procedural prerequisites to habeas relief, the AEDPA sets forth the standard by which federal courts review the merits of properly asserted grounds for relief.  In pertinent part, the AEDPA provides:

(d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless

---

[3] Respondent's Return of Writ contends that Ground Four is partially defaulted and Ground Five is waived.  (Doc. 6 at 18-21.)

-7-

the adjudication of the claim –

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

After passage of the AEDPA, the various circuits interpreted the standard to be applied differently under these provisions.   In response to these nationwide variations, the Supreme Court directly addressed the meaning of the AEDPA's statutory language and, as the Sixth Circuit has confirmed, announced that the statute "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court."  *Campbell v. Coyle*, 260 F.3d 531, 539 (6th Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

The Supreme Court clarified the language of § 2254(d)(1), and held that:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-413.  The Court offered additional guidance regarding the meaning of "unreasonable application."  A state court opinion can also engender the "unreasonable application" of Supreme Court precedent if it "either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context."  *Id*. at 409.  Further, the Court

-8-

declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* As noted by the Sixth Circuit, by amending § 2254(d)(1) through the AEDPA, Congress intended to place "reasonable state court judgments beyond the scope of federal review." *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998).

Additionally, in reviewing habeas petitions, federal courts are obliged to "accept as valid a state court's interpretation of state law and rules of practice of that state." *Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986). Similarly, federal courts are not free to ignore the pronouncement of a state appellate court on matters of state law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676 (6th Cir. 2000). "Federal habeas corpus relief does not lie for errors of state law." *Earhart v. Konteh*, 589 F.3d 337, 349 (6th Cir. 2009) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). The standard of review applied to the merits of a petition for a writ of habeas corpus, therefore, is a stringent one.

### D. Standard of Review of an R&R

In cases where a Magistrate Judge has prepared a R&R and timely objections are made, the Court is required to make a *de novo* review only of those portions of the R&R to which objections were made. 28 U.S.C. § 636(b)(1); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981). *De novo*

review requires this Court to reexamine the evidence brought before the magistrate to determine whether the R&R should be accepted, denied, or modified. 28 U.S.C. § 636(b)(1).

General objections, or those objections that restate arguments made before the magistrate are not sufficient to alert the Court to alleged errors made by the Magistrate Judge.  In other words, if an "objection" merely states a disagreement with the Magistrate Judge's suggested resolution or summarizes what was brought before the Magistrate Judge, it is not an objection for the purposes of this review. *Cvijetinovic v. Eberlin*, 617 F. Supp. 2d 620, 632 (N.D. Ohio 2008) *rev'd on other grounds*, 617 F.3d 833 (6th Cir. 2010).  Such "general objections" do not serve the purposes of Federal Rule of Civil Procedure 72(b), which requires the Court to conduct a *de novo* review of only those portions of a Magistrate Judge's R & R to which a party objects, and are equivalent to a failure to object. *See Jones v. Moore*, No. 3:04CV7584, 2006 WL 903199, at *7 (N.D. Ohio Apr.7, 2006).

### III.  ANALYSIS OF THE MAGISTRATE JUDGE'S R&R AND NOLAN'S OBJECTIONS

#### A.  Ground One - Insufficient Evidence

In his Petition, Nolan asserts his conviction was supported by insufficient evidence because (1) an improper definition of "force" was utilized; and (2) there was no showing of "circumstances which created a substantial risk of physical harm" to the victim.  (Doc. 7 at 3.)  After summarizing relevant case law and analyzing the facts presented at trial, Magistrate Judge White found that there was sufficient evidence for a rational trier of fact to have found all of the essential elements of attempted kidnaping.  (Doc. 11 at 12.)  Specifically, Magistrate Judge White found the evidence sufficient for a rational trier of fact to find that Nolan used "force" as that term is to be interpreted under Ohio law.  (*Id.* at 11.)  In addition, Magistrate Judge White found that the evidence presented at trial was adequate for a rational trier of fact to find "a substantial risk of serious harm to the

-10-

victim" sufficient to sustain a conviction for attempted kidnaping.  (*Id.* at 12.)

### 1.  Nolan's Insufficient Evidence Objections

Nolan claims that Magistrate Judge White: (1) "misapplied Ohio law in considering what constituted 'force;' " (2) failed to consider that the state was required to prove "circumstances which created a substantial risk of serious harm;"[4] and (3) failed to consider "whether the attempt statute even applied to [] kidnaping . . . ."[5]  (Doc. 13 at 1, 5.)

### 2.  Analysis of Nolan's Insufficient Evidence Objections

Nearly three of the five pages Nolan devotes to these objections are copied verbatim from his Traverse.  (*Compare* Doc. 13 at 2-4 *with* Doc. 7 at 3-6.)  The similarity, moreover, between the arguments made in Nolan's Objections and his Traverse suggest that these objections are not, in fact, proper objections.  These objections merely "summarize[] what has been presented before." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747-48 (E.D. Mich. 2004) (holding that an objection that merely states a disagreement with the R&R's resolution, or simply summarize what has been presented before, is not an objection and has the same effect as a failure to object).  Assuming Nolan raised proper objections with respect to the sufficiency of the evidence, the Court, for the reasons articulated

---

[4] It is unclear from the record whether Nolan asserted this error with either the Ohio Court of Appeals or the Supreme Court of Ohio.  If Nolan failed to assert this error with these courts, it is likely that Nolan waived this ground for relief.

[5] Based on the record before the Court, Nolan raised this error for the first time in his objections to the R&R.  Accordingly, Nolan has waived this ground for relief.  Even if this ground for relief were not waived, however, it would not be well-taken because Ohio courts recognize attempted kidnaping. *See e.g.*, *State v. Gales*, No. 00CA007541, 2000 WL 1729454, at *1 (Ohio Ct. App. Nov. 22, 2000) (affirming attempted kidnaping conviction); *State v. Gipson*, No. CA97-07-080, 1998 WL 166476, at *5 (Ohio Ct. App. Apr. 6, 1998) (holding that attempted kidnaping conviction was not against the manifest weight of evidence).

-11-

below, overrules these objections because Nolan's arguments are not well-taken.

Regarding Nolan's objection that the Magistrate Judge misapplied Ohio law with respect to "force," the R&R analyzes Ohio case law, which establishes that an Ohio court may define force in a jury instruction as "effort." *See e.g.*, *State v. Lane*, 361 N.E.2d 535, 539 (Ohio Ct. App. 1976); *State v. Muniz*, 832 N.E.2d 1279, 1283 (Ohio Ct. App. 2005); *State v. Dye*, No. 1117, 1986 WL 7246, at *1-2 (Ohio Ct. App. June 26, 1986).  Summarizing the evidence, in the light most favorable to the prosecution, the R&R states, "Nolan asked the victim several times to get into his vehicle. When the victim said no, he exited his vehicle and moved towards her.  The victim turned to run and he chased her."  With respect to this objection, the Court's task is to determine "whether it was objectively unreasonable for the Ohio Court of Appeals to conclude that a rational trier of fact, after viewing the evidence in the light most favorable to the state, could have found that Petitioner committed the essential elements of the crime beyond a reasonable doubt."  (Doc. 11 at 9 (citing *Nash v. Eberlin*, 258 Fed.Appx. 761, 2007 WL 4438008, *4 (6th Cir. Dec. 2007).)

Nolan's objection, in essence, asks this Court to invalidate an Ohio court's application of Ohio law.  But in the course of reviewing a habeas petition, a court is "obligated to accept as valid a state court's interpretation of state law . . . of that state."  *Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) (citing *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986)).  The cases Nolan cites in support of his contention that the Ohio Court of Appeals improperly defined force, moreover, are not on point because they relate to the crime of gross sexual imposition, in which Ohio courts have defined force more narrowly.[6]  There is no indication that the definition of force utilized by the Ohio

_____

[6] All three cases cited by Nolan involve convictions for gross sexual imposition in violation of O.R.C § 2907.05.  *State v. Euton*, No.2-06-35, 2007 WL 4374293, at *1 (Ohio Ct. App. Dec. 17, 2007); *State v. Mitchell*, No. 58447, 1991 WL 106037, at *1 (Ohio Ct. App. June

Court of Appeals was improper in the context of an attempted kidnaping charge.  Accordingly, the

Court finds that Nolan's objection with respect to the definition of force employed at trial is not well-

taken.

Nolan also objects to the R&R because he claims there was insufficient evidence to establish

the essential element of "substantial risk of serious harm" and that the Magistrate Judge never

addressed the issue.  Nolan is wrong on both points.  Nolan was convicted of attempted kidnaping.

In light of this fact, the state was only required to prove that Nolan performed an act which

constituted a substantial step in a course of conduct planned to culminate in kidnaping.  "To

constitute a substantial step, the defendant's conduct must be strongly corroborative of his criminal

purpose."  (Doc. 11 at 12 (citing *State v. Jackson*, No. 72014, 1997 WL 764760, at *2 (Ohio Ct.

App. Dec. 11, 1997).)  Summarizing the evidence, the R&R states "Nolan attempted to lure the

victim, a teenage girl, into his vehicle in the early morning hours when no others were in the area.

He then briefly chased her when she refused to comply."  The Magistrate Judge concluded that,

based on this evidence "had Nolan been successful in forcing the victim against her will into his

vehicle, the substantial risk of serious harm would have clearly existed."  (Doc. 11 at 12.)  The Court

---

13, 1991); *State v. Byrd*, No. 82145, 2003 WL 21710795, at * 1 (Ohio Ct. App. July 24, 2003).
The gross sexual imposition statute, provides in pertinent part: "No person shall have sexual
contact with another, not the spouse of the offender, when any of the following applies: (1) The
offender purposely compels the other person, or one of the other persons, to submit by force or
threat of force." Ohio Rev. Code Ann. § 2907.05 (West 2005).  Regarding the showing of force
required to establish this offense, the *Euton* court stated "[t]o find [force] on these facts would
render the distinction between sexual imposition and gross sexual imposition meaningless, . . .
and essentially allow any inappropriate touching to constitute gross sexual imposition, regardless
of the use of force or a threat of force." *Euton*, 2007 WL 4374293, at * 8.  For this reason, Ohio
courts require a greater showing of force in cases involving gross sexual imposition than for
other crimes, such as kidnaping.  *Compare Euton*, 2007 WL 4374293 (gross sexual imposition)
*with Muniz*, 832 N.E.2d 1279 (kidnaping).

-13-

agrees with the R&R that it was not objectively unreasonable for the Ohio Court of Appeals to conclude that a rational trier of fact could have found that Nolan committed the essential elements of attempted kidnaping beyond a reasonable doubt.  Accordingly, the Court **ADOPTS** the R&R with respect to the conclusion that Ground One of Nolan's Petition should be **DENIED**.

### B. Ground Two - Warrantless Arrest Violated Due Process

Nolan asserts he was denied due process of law because he was arrested at his home without a warrant.  (Doc. 7 at 6.)  In light of Nolan's allegedly illegal arrest, he asserts that all evidence derived as a result of the arrest should have been suppressed.  (*Id.* at 9.)  Magistrate Judge White properly notes that officers making an arrest in a home must have either a warrant, or probable cause and exigent circumstances.  (Doc. 11 at 12.)  The R&R also correctly notes, however, that a police officer can arrest a person outside of a home without a warrant so long as the officer has probable cause to make the arrest; no exigent circumstances need exist.  (*Id.* at 14.)  In addition, the Sixth Circuit, like other circuits, has recognized the investigative technique known as a "knock and talk." *United States. v. Thomas*, 430 F.3d 274, 277 (6th Cir. 2005) ("A number of courts, including this one, have recognized 'knock and talk' consensual encounters as a legitimate investigative technique at the home of a suspect or an individual with information about an investigation."); *United States v. Jones*, 239 F.3d 716, 720 (5th Cir.2001) ("Federal courts have recognized the 'knock and talk' strategy as a reasonable investigative tool . . . ."); *United States v. Cormier*, 220 F.3d 1103, 1109 (9th Cir. 2000) (holding that "no suspicion needed to be shown in order to justify the 'knock and talk.'"). The R&R, moreover, notes that the Sixth Circuit has approved use of the knock and talk technique to lure a suspect outside of his home so the suspect can be arrested without a warrant. (Doc. 11 at 14 (citing *Thomas*, 430 F.3d at 277).)

The R&R found that Nolan's arrest did not violate his due process rights because he voluntarily came outside of his house and there was probable cause for his arrest, which occured outside of his home.  (Doc. 11 at 16.)  The R&R concludes that "[t]he state court finding Nolan's arrest lawful was neither an objectively unreasonable application of clearly established Federal law, nor was it based on an unreasonable determination of facts in light of the evidence."  (*Id.*)

### 1.  Nolan's Warrantless Arrest Objections

Nolan objects to the R&R because (1) the knock and talk technique is irrelevant to his case; and (2) the arresting officer had insufficient information to constitute probable cause for arresting Nolan without a warrant.  (Doc. 13 at 6.)

### 2.  Analysis of Nolan's Warrantless Arrest Objections

Contrary to Nolan's assertion, knock and talk is not irrelevant to his case.  It is true that the knock and talk investigative technique is often described as a method for police to obtain consent to search a home.  *United States v. Chambers*, 395 F.3d 563, 568 n.2 (6th Cir. 2005).  Courts have, however, relied on the technique to support arrests made outside of a suspect's home, with probable cause and without a warrant, when the suspect voluntarily consented to leave their home to speak with officers.  *See e.g.*, *Thomas*, 430 F.3d at 278; *United States v. Grayer*, 232 F. Appx. 446, 450 (6th Cir. 2007) (There is nothing . . . preventing the police from knocking on a home's door and questioning a suspect or an individual with information about an investigation. And if, during the course of this questioning, the suspect willingly and voluntarily acquiesces to noncoercive police requests to leave the protection of the house, then, absent a show of force that would provide a basis for a reasonable person to believe he was compelled to leave the house, a subsequent outside the home seizure does not offend *Payton*.") (citations omitted).  In light of this precedent, the Magistrate

-15-

Judge properly analyzed Nolan's case by reference to the knock and talk procedure. Accordingly, this objection is not well-taken.

Turning to Nolan's objection that the arresting officers lacked probable cause, the state court of appeals held that the record revealed a "particularized and objective basis for suspecting defendant of criminal activity and this evidence was . . . sufficient to establish probable cause . . . ." *Nolan*, 2007 WL 853217, at *3. The R&R notes that the officer making the arrest had a description of the victim's assailant and his vehicle. (Doc. 11 at 15.) The vehicle was described as "a black Cherokee, with tinted windows and white lettering and numbering," while the suspect was described by the victim as being a black male, approximately 5'11" tall, weighing 250 pounds, dark complected, bald, with facial hair, and wearing a brown jacket. (Doc. 6-9 at 191.)

When the arresting officer saw a vehicle parked in the driveway of the home, which matched the victim's fairly detailed description, he approached the home and knocked on its door. When Nolan came to the door, he admitted that he owned the vehicle. The officer determined that Nolan matched the victim's description (a point Nolan does not dispute), and the officer placed Nolan under arrest after he voluntarily stepped outside of the home. *Nolan*, 2007 WL 853217, at *1; (Doc. 6-9 at 193-96.)

On this record, the Magistrate Judge correctly notes that the facts of this case are "strikingly similar" to *McCray v. Metrish*, in which the Sixth Circuit found probable cause. *McCray v. Metrish*, 232 Fed. Appx. 469, 481 (6th Cir. 2007) (holding that probable cause for arrest existed on the basis of a vehicle's distinctive wheel rims even in the absence of a description of the suspect). This comparison is apt. The description of white numbering and lettering on a specific model of vehicle is quite unique, and Nolan's physical description was fairly detailed. The Court agrees with the

-16-

R&R that the state court's finding that Nolan's arrest was lawful was neither an objectively unreasonable application of clearly established federal law, nor based on an unreasonable determination of facts in light of the evidence.  Accordingly, the Court **ADOPTS** the R&R with respect to the conclusion that Ground Two of Nolan's Petition should be **DENIED**.

### C.    Ground Three - Sixth Amendment Confrontation Rights and Right to a Public Trial

Nolan contends he was denied his "Sixth Amendment right to be present and his right to a public trial where the court conducted an examination of the key witness in the court's chamber and excluded petitioner from that hearing." (Doc. 7 at 9.)  In addition, Nolan asserts he was denied his right to confront an adverse witness when this hearing was conducted in his absence.  Magistrate Judge White began his analysis of Nolan's asserted grounds for relief by discussing the applicable federal standards.  (Doc. 11 at 18-20.)  Regarding the right to a public trial, the R&R states,

> the right to a public trial is not absolute.  In *Waller v. Georgia*, the Supreme Court held that the right to a public trial applied to suppression hearings and also set forth considerations that must be made before any part of a trial or hearing can be properly closed.  *Waller* set forth a four-prong test: "[1] the party seeking to close the hearing . . . advance[s] an overriding interest that is likely to be prejudiced, [2] the closure [is] no broader than necessary to protect that interest, [3] the trial court . . . consider[s] reasonable alternatives to closing the proceeding, and [4] [the trial court] . . . make[s] findings adequate to support the closure."

(Doc. 11 at 18-19 (citations omitted).)  While the Magistrate Judge implies that a violation of the right to a public trial is subject to harmless error analysis, contravention of this right is structural error.[7]  That does not mean, however, that the circumstances surrounding and the implications of,

---

[7] Violation of the right to a public trial is a structural violation that is not subject to harmless error analysis.  *E.g.*, *Arizona v. Fulminante*, 499 U.S. 279, 310 (1999) (concluding that the right to a public trial is a constitutional error that is not subject to harmless error) (citing *Waller v. Georgia*, 467 U.S. 39, 49 n.9 (1984)); *Johnson v. Sherry*, 586 F.3d 439, 443 (6th Cir. 2009) ("[D]enial of [the] right to a public trial is considered a structural error for which prejudice

any courtroom closure are irrelevant to the question of *whether* such a violation has occurred.  *See Waller*, 467 U.S. at 48-49.  Accordingly, the Magistrate Judge properly focused on these factors to determine whether Nolan's right to a public trial was violated.

Before determining whether the hearing violated his rights, Magistrate Judge White described the hearing from which Nolan was excluded.  (Doc. 11 at 20-21.)  During the case at bar, the trial court held a hearing to address Nolan's motion to voir dire the victim.  (*Id.* at 20.)  The Defendant requested the hearing to determine whether the police conducted the line-up identification properly, and if not, whether Nolan should file a motion to suppress the victim's identification at the line-up. (*Id.* at 20-21.)  During the hearing, Nolan was excluded from the victim's testimony because of fear she would be intimidated by his presence.  (Doc. 11 at 20-21.)  Nolan, however, was only excluded from the victim's testimony; he was present for the testimony of three police officers.  (*Id.* at 21.) Magistrate Judge White concluded that the four prongs of *Waller* were satisfied because the record supported closure of the victim's testimony in light of potential intimidation of the victim, which amounted to a compelling state interest.  (*Id.* at 22.)

With respect to Nolan's asserted confrontation clause violation, the R&R notes that this right is not absolute, and it "must occasionally give way to considerations of public policy and the necessities of the case." (Doc. 11 at 20 (citing *Maryland v. Craig*, 497 U.S. 836, 849 (1990)).)  The R&R notes that the record indicates that "the victim, in open court identified [Nolan].  She also testified to seeing Nolan at the location of the incident and to identifying him in the police line-up. Nolan then had the opportunity to fully confront the witness, face-to-face." (Doc. 11 at 23.)  In light of the record, Magistrate Judge White concluded that the state court's holding that excluding Nolan

---

is presumed.").

did not render the proceeding unfair or unjust, and was a reasonable application of federal law.  (*Id.*)

### 1. Nolan's Objections

Regarding Nolan's claim that his right to a public trial was violated, he objects to the R&R on the grounds that "the Magistrate Judge premised his conclusion on the unsupported reference by the trial judge of potential further intimidation," which Nolan claims there is no evidence to support. (Doc. 13 at 10.)  In addition, Nolan objects because the Magistrate Judge's "report concluded that even if this claim were found to be well-taken the remedy would be to hold a new hearing.  While this may be so, if a new hearing is needed then a new hearing should be conducted."  (*Id.*)  Finally, Nolan appears to object that the Magistrate Judge improperly analyzed the alleged violation of his Sixth Amendment right to confront Martin during the voir dire.[8]  (Doc. 13 at 9, 10.)

### 2. Analysis of Nolan's Public Trial Objections

Nolan's allegation that his right to a public trial was violated requires this Court to address: (1) whether the right to a public trial attached to the hearing in this case; and (2) if the right did attach, whether it was violated by the closure.

#### a. Does the Right to a Public Trial Extend to this Pre-trial Hearing?

In *Waller*, the Court held that a criminal defendant's right to a public trial extends to a

---

[8] Nolan appears to raise this objection in two places.  He, first, raises this objection by stating that his "right to be present" at the voir dire was violated.  (Doc. 13 at 9.)  Nolan then, in a single sentence, mentions that the voir dire violated his Sixth Amendment right to confront the victim.  (Doc. 13 at 10.)  Nolan copied these portions of his objections from his traverse. (*Compare* Doc. 13 at 9, 10-11 *with* Doc. 7 at 9, 10.)  Based on the foregoing, it is not clear whether Nolan is actually objecting to the R&R because it improperly analyzed his confrontation rights.  Despite this lack of clarity and the fact that these objections are not proper objections, the Court will, out of an abundance of caution, address this objection.

suppression hearing. *Waller*, 467 U.S. at 47.  Subsequently, the Court held that the right to a public

trial extends to voir dire of jurors. *Presley v. Georgia*, 130 S. Ct. 721, 724 (2010).  Courts have,

moreover, held that the right to a public trial applies to certain pre-trial hearings. *E.g.*, *United States*

*v. Edwards*, 303 F.3d 606, 616 (5th Cir. 2002) (applies to pre-trial hearing to determine whether to

empanel an anonymous jury); *United States v. Waters*, 622 F.3d 1075, 1089 (9th Cir. 2010) (applies

to pre-trial hearing on several motions *in limine*).  Courts, however, have held that the right does not

apply to certain proceedings during trial. *E.g.*, *United States v. Norris*, 780 F.2d 1207, 1210 (5th Cir.

1986) (does not apply to bench conferences during trial, which involved the discussion of technical

legal issues and routine administrative problems); *United States v. Vazquez-Botet*, 532 F.3d 37, 51

(1st Cir. 2008) (does not apply to a " 'question-and-answer' offer of proof, the purpose of which was

to create a record so [the appellate court] could determine the propriety of the [trial] court's

relevancy ruling.").  Neither the Supreme Court nor any of the Circuit Courts of Appeals have

determined whether a criminal defendant's right to a public trial extends to the type of pre-trial

hearing conducted in this case.

In *Waller*, the Court determined that the public trial right extended to a pre-trial suppression

hearing because the values protected by the right to a public trial are equally implicated during a

suppression hearing. *Waller*, 467 U.S. at 46.  These values are: (1) to ensure a fair trial; (2) to

remind the prosecutor and judge of their responsibility to the accused and the importance of their

functions; (3) to encourage witnesses to come forward; and (4) to discourage perjury. *Id.*; *see also*

*Waters*, 622 F.3d at 1089 ("We have previously stated that the public-trial right attaches to those

hearings whose subject matter 'involve[s] the values that the right to a public trial serves.' ")

(citations omitted).

-20-

In this case, it is unclear whether the right to a public trial attached to the pre-trial hearing from which the public was excluded. At the outset, here, the hearing was for the purpose of discovery. (Doc. 6-6 at 50.) Nolan's counsel requested the hearing to gather facts surrounding the line-up identification, so he could determine whether grounds existed to file a motion to suppress the identification. This is not a case like *Waller* where the hearing involved allegations of misconduct on the part of the government. *Waller*, 467 U.S. at 47. Here, there were no allegations that the police improperly conducted the line-up identification; Nolan requested the hearing to gather facts to determine if such misconduct occurred. As such, this hearing was not the type of miniature trial that the Court faced in *Waller*. *Id.* And, the hearing conducted in this case did not have the same indicia present in other hearings to which the right to a public hearing has attached, nor did it involve the concerns for a public trial that *Waller* was intended to address.

Ultimately, the Court concludes that it need not reach this issue because it finds the closure appropriate for other reasons.

### b. Nolan's Right to a Public Trial Was Not Violated

Even assuming the right to a public trial applied to the hearing in this case, that right was not violated. First, the closure in this case was so trivial that it did not amount to a violation of Nolan's right to a public trial. *E.g.*, *Peterson v. Williams*, 85 F.3d 39, 43-44 (2d Cir. 1996) (holding that the inadvertent closure of the courtroom for twenty minutes while the defendant testified was too trivial to violate his right to a public trial); *United States v. Ivester*, 316 F.3d 955, 959-60 (9th Cir. 2003) (holding that closed courtroom mid-trial questioning of the jury about their safety concerns was too trivial to have violated the defendant's public trial right); *United States v. Perry*, 479 F.3d 885, 889-91 (D.C. Cir. 2007) (holding that not allowing the defendant's eight-year-old child to be present at

-21-

trial was too trivial to violate the defendant's public trial right); *Tillman v. Bergh*, 2:06-CV-11555, 2008 WL 6843654, at *15-16 (E.D. Mich. July 2, 2008) (holding that a closure that lasted for only four minutes of uncontested testimony related to a technical matter on a collateral issue was too trivial to have violated the defendant's right to a public trial).  Second, based upon the totality of the circumstances, the closure met the requirements of the *Waller* test and, on balance, the procedure utilized by the trial court was the most appropriate and least intrusive method for partially closing the court room.

> **1.  The Closure Did Not Amount to a Violation of the Public Trial Right Because it Was Trivial**.

There are certain instances in which a courtroom closure cannot be characterized properly as implicating the constitutional guarantee of a public trial.  *Perry*, 479 F.3d at 890 (citing *Peterson*, 85 F.3d at 42).  As the Second Circuit in *Peterson* explained:

> A triviality standard, properly understood, does not dismiss a defendant's claim on the grounds that the defendant was guilty anyway or that he did not suffer "prejudice" or "specific injury." It is, in other words, very different from a harmless error inquiry. It looks, rather, to whether the actions of the court and the effect that they had on the conduct of the trial deprived the defendant-whether otherwise innocent or guilty-of the protections conferred by the Sixth Amendment.

*Peterson*, 85 F.3d at 42.  A courtroom closure is "trivial" if it does not implicate the "values served by the Sixth Amendment" as described in *Waller*.  *Perry*, 479 F.3d at 890 (citing *Peterson*, 85 F.3d at 42).  As discussed above, these values are: (1) to ensure a fair trial; (2) to remind the prosecutor and judge of their responsibility to the accused and the importance of their functions; (3) to encourage witnesses to come forward; and (4) to discourage perjury.  *Waller*, 467 U.S. at 46.

The closure in this case was too trivial to have violated Nolan's right to a public trial.  The

values served by the right to a public trial were not implicated by this closure for several reasons. First, the fact that this hearing was for the purpose of discovery weighs against finding a violation of Nolan's right to a public trial was violated.  *Cf. id.* at 47 (discussing how the miniature trial nature of a suppression hearing implicates the values protected by the right to a public trial).  Second, the closure of the hearing was very brief.  *See Peterson*, 85 F.3d at 41, 43 (finding a closure of twenty minutes was too trivial); *Ivester*, 316 F.3d at 960 (finding that a brief closure was too trivial to have violated the right to a public trial).  The nature of the testimony elicited during this brief closure also supports the conclusion that the closure was trivial.  Martin's testimony during the closure was largely duplicative of the testimony offered by other witnesses in open court.  *See Peterson*, 85 F.3d at 43-44 (noting that to the extent a brief closure might implicate the value of encouraging witnesses to come forward, the fact that the testimony offered during the closure was repeated during summation adequately protected the value).  It also was the subject of prior recorded statements she made to those same testifying witnesses.  It was, moreover, subject to cross-examination by Nolan's counsel.   For all of these reasons, the Court finds that the courtroom closure was too trivial to have violated Nolan's right to a public trial.

### 2.  The Trial Court Satisfied the Requirements of *Waller*.

Even if the closure was sufficiently substantial to have violated Nolan's right to a public trial, the Court finds that the requirements of *Waller* were met, and that Nolan's right to public trial was satisfied.  Nolan's first objection attacks the R&R's analysis of prong one of *Waller*.  In essence, he contends that Magistrate Judge White's conclusion that an overriding state interest supported exclusion of Nolan from the victim's testimony was erroneous.  Under the four part test announced in *Waller*, a courtroom closure does not violate a criminal defendant's Sixth Amendment right if:

(1) the party seeking to close the courtroom advances an overriding interest that is likely to be prejudiced; (2) the closure is no broader than necessary to protect that interest; (3) the trial court considered reasonable alternatives to closing the proceeding; and (4) the trial court made adequate findings to support the closure. *Waller*, 467 U.S. at 48. With respect to what constitutes an "overriding interest," courts have held the need to protect a witness from emotional trauma justifies closure of the courtroom. *See e.g.*, *Bell v. Jarvis*, 236 F.3d 149, 171-74 (4th Cir. 2000); *United States v. Brazel*, 102 F.3d 1120, 1156 (11th Cir. 1997).

Despite Nolan's contention to the contrary, the trial judge's reference to potential further intimidation is supported by the evidence. The record before the trial judge, taken in the light most favorable to the state, established that: (1) the victim looked frightened during the identification (Doc. 6-6 at 41); (2) she ran from the identification room after seeing Nolan and was hesitant to provide any identification (*id.* at 22, 24); (3) Nolan lingered after the identification was completed, appearing "to stare a hole" through the window where the victim would have been standing during the identification. (*Id.* at 43, 44.)

With respect to the remaining prongs of the *Waller* analysis, this Court concludes that the trial court made adequate findings in the record to support closure. While it would have been far better if the trial judge had made a more detailed record with respect to whether the closure was necessary to protect Martin from intimidation, the record is sufficient for this Court to conclude that the requirements of *Waller* were satisfied. *See Waller*, 467 U.S. at 45 (citing *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 510 (1984)) (findings are adequate if a reviewing court can determine whether the closure order was properly entered). The Court concludes that, on balance, the procedure adopted by the trial court was neither unreasonable in the circumstances nor

-24-

violative of Nolan's public trial right.

The Court will not consider Nolan's second argument that a new voir dire hearing should be conducted because the objection is premised on the assumption that the trial court improperly closed the portion of the voir dire hearing in which the victim testified.  As explained in the above analysis, closure of this portion of the pre-trial hearing did not violate Nolan's right to a public trial.

### 3.  Analysis of Nolan's Confrontation Clause Objections

A criminal defendant has a constitutional right to be present at all critical stages of his or her trial.  *United States v. Gibbs*, 182 F.3d 408, 436 (6th Cir. 1999).  This right "is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, but [the Supreme Court has] recognized that this right is protected by the Due Process Clause in some situations . . . ."  *United States v. Gagnon*, 470 U.S. 522, 526 (1985).  Nolan asserts only that his rights under the Sixth Amendment were violated (Doc. 1 at 4), therefore, the Court will not address his Due Process rights in relation to the voir dire hearing.

The Confrontation Clause to the United States Constitution provides that in "all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. Amend. VI.  The Confrontation Clause protects two different rights of the criminally accused: "the right physically to face those who testify against him, and the right to conduct cross-examination."  *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987) (plurality opinion) (citing *Delaware v. Fensterer*, 474 U.S. 15, 18-19 (1985) (per curiam)).  The Confrontation Clause has been violated if there was interference with the defendant's opportunity for effective cross-examination.[9]

---

[9] For the purpose of this petition, the Court assumes that the Confrontation Clause rights apply to the voir dire hearing conducted in this case.  The defendant's right to confront his

-25-

*Kentucky v. Stincer*, 482 U.S. 730, 740 (1987); *see also McMillian v. Anderson*, No. 96-3914, 1998 WL 840872, at *3-4 (6th Cir. Nov. 17, 1998) (Confrontation Clause rights not violated by exclusion of defendant and his counsel from competency hearing of a child witness, where defendant had opportunity for full and effective cross-examination at trial).

In *Stincer*, the defendant, but not his counsel, was excluded from the competency hearing of two minor witnesses. *Stincer*, 482 U.S. at 732-33.  The minors were deemed competent and they both testified in open court, subject to cross-examination by the defendant's attorney.  *Id.* at 733. The Court held that the defendant's confrontation rights were not violated because his exclusion from the hearing did not interfere with his opportunity for effective cross-examination.  *Id.* at 740.

Here, Nolan was precluded from a pre-trial hearing.  Nolan was excluded from the portion of the voir dire hearing in which Martin testified.  Nolan's counsel, however, was present and questioned Martin during her in-chambers testimony.  As in *Stincer*, Martin testified in open court at trial in the presence of Nolan and was subject to cross-examination by his counsel.  Because Nolan's counsel was present and examined Martin during the voir dire and she later testified in open court in Nolan's presence, the Court concludes that Nolan's confrontation rights were not violated. Like in *Stincer,* the trial court's decision to allow Martin to testify in chambers during the voir dire without Nolan present did not interfere with his opportunity for effective cross-examination.

Accordingly, Nolan's objections are not well-taken.  While the Court agrees with the Magistrate Judge's recommendation that Nolan's request for relief on this ground be denied, the Court reaches this conclusion for different reasons.  The Court declines to adopt the R&R to the

---

accuser, however, has been described as a "trial right . . . ."  *Ritchie*, 480 U.S. at 51 (holding that the right of confrontation only pertains to trial and not pre-trial activities); *see also Kentucky v. Stincer*, 482 U.S. 730, 738 n.9 (1987) (collecting cases).

extent that its analysis is inconsistent with the above analysis.  The R&R, therefore, is **ADOPTED** and **MODIFIED** as discussed above.

### D.    Ground Four - Improper Jury Instructions

Nolan's Petition contends that his Due Process rights were violated when the trial court (1) gave an "on or about" instruction regarding the date of the offense; and (2) failed to give an alibi instruction, even though Nolan had presented alibi evidence.  (Doc. 7 at 11, 12.)  As the R&R notes, under the federal standard, not every deficiency in a jury instruction rises to the level of a due process violation.  (Doc. 11 at 25.)  "In order to warrant habeas relief, a petitioner must demonstrate that the jury instructions were both erroneous and, taken as a whole, so infirm that the entire trial was rendered fundamentally unfair."  (*Id.* (citing *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).)  In fact, the category of errors whose commission violates fundamental fairness is very narrow.  (*Id.*)  As a consequence, a habeas petitioner must establish that "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  *(Id.* at 26 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).)

At the outset, after discussing relevant Ohio case law, the R&R notes that the appellate court "[r]elying on these cases . . . found the 'on or about' instruction proper and found no plain error in not including an alibi instruction."  (*Id.* at 28.)  With respect to the alleged unfairness of the jury instruction, the R&R found that

> the record reflects that Nolan's counsel placed so little weight on the alibi evidence that the only mention of it in his closing argument was in the context of questioning the quality of the police investigation.  The closing, almost exclusively, focused on the quality of the victim's identification of Nolan, attempting to show how unreliable it was.  The evidence in support of the alleged alibi consisted solely of Willis' testimony.  The jury was free to weigh this testimony in the context of the trial court's explicit instruction that the burden of proof was on the prosecution.

-27-

(*Id.*)  In light of the record, the Magistrate Judge concluded that Nolan did not establish that the alleged errors in the jury instruction so infected the entire trial as to rise to the level of a Due Process violation.  (*Id.*)

### 1.  Nolan's Objections to the R&R's Analysis of the Jury Instructions

In his objections to the R&R, Nolan states

> [t]he Magistrate Judge . . . essentially adopted the reasoning of the Court of Appeals for Cuyahoga County on this subject.  However, petitioner had a right to present a defense and have the jury instructed on his defense.  To state that the jury heard the testimony of the witness and could determine the witness's credibility did not fully outline to the jury the issues that the jury had to decide . . . Petitioner offered evidence that he was not present and the jury was entitled to have an alike instruction.

(Doc. 13 at 11.)

### 2.  Analysis of Nolan's Objections

Prior to reaching the merits of Nolan's objections, this Court must, at the outset, call attention to the fact that his objections to this portion of the R&R are not proper.  As already noted, restatements of arguments presented to the Magistrate Judge and addressed in the R&R are not objections.  *Cvihetinovic*, 617 F. Supp. 2d at 632.  Of the two-and-a-half pages Nolan devotes to his objections to the jury instructions, one-and-a-half pages are copied verbatim from his Traverse.  (*Compare* Doc. 13 at 12-13 *with* Doc. 7 at 11-13.)  The rest of Nolan's objections, moreover, are merely a restatement of the argument made in his Traverse and addressed by the Magistrate Judge in the R&R, namely that Nolan's constitutional rights were violated by the jury instructions at trial.

Regarding the merits of Nolan's objections, the Court concludes that they are not well-taken.  As the R&R correctly notes "[i]n order to warrant habeas relief, a petitioner must demonstrate that

the jury instructions were *both* erroneous and, taken as a whole, so infirm that the entire trial was rendered fundamentally unfair." (Doc. 11 at 25.) Nolan has offered no evidence that the instructions in this case fall into the exceedingly narrow class of erroneous jury instructions that render an entire trial fundamentally unfair. With respect to the "on or about" instruction, there is no per se prohibition to such instructions, and these instructions are "subject to the harmless error analysis." *United States v. Neuroth*, 809 F.2d 339, 341-42 (6th Cir. 1987). In addition, the Ohio Appellate Court found that the "on or about" instructions comported with Ohio law. *Nolan*, 2007 WL 853217, at *7. The Court agrees with the R&R that the "on or about" instruction did not render the trial fundamentally unfair.

Regarding the lack of an alibi instruction, the R&R correctly notes that, under Ohio law, "though a failure to instruct a jury on the defense of alibi is error even if not requested, it is plain error only if the instruction would have altered the outcome of the case or if its commission caused a manifest miscarriage of justice." *State v. Mitchell*, 574 N.E.2d 573, 576 (Ohio Ct. App. 1989).[10] The Court agrees with the Magistrate Judge that the lack of an alibi instruction did not render Nolan's trial fundamentally unfair. The jury heard the alibi witness, and "the jury was free to weigh this testimony in the context of the trial court's explicit instruction that the burden of proof was on the prosecution." (Doc. 11 at 28.)

In light of the record, this Court finds that the jury instructions did not render the entire trial fundamentally unfair. Accordingly, Nolan's objections are not well-taken, and the Court **ADOPTS** the R&R's recommendation on this issue.

---

[10] It is undisputed that Nolan's counsel did not object at trial to the absence of an alibi instruction, mandating a "plain error" analysis of this issue.

### E.    Ground Five - Ineffective Assistance of Counsel

In his petition, Nolan asserts that his trial counsel was constitutionally ineffective because counsel: (1) failed to file a motion to suppress the warrantless arrest and identification procedure; (2) failed to file a motion to suppress the identification of Nolan's vehicle by the victim because the identification procedure was unduly suggestive; and (3) failed to request an alibi instruction. (Doc. 7 at 14-15.)  After summarizing the state court adjudication, the R&R discusses the federal standard required to establish an ineffective assistance of counsel claim.  (Doc. 11 at 29.)  To establish that counsel was ineffective, "a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment . . . ."  (*Id.* (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).)  In addition, the R&R notes that a petitioner must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to the extent that it rendered the proceeding unfair.  (*Id.*)  "In other words, a counsel's deficient performance must have 'caused the defendant to lose what he otherwise would probably have won' and it must have been 'so manifestly ineffective that defeat was snatched from the hands of probable victory.' " (Doc. 11 at 29 (quoting *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992)).)  Finally, the R&R discusses the additional requirements a petitioner alleging ineffective assistance of counsel on the basis of a Fourth Amendment violation must establish.  (*Id.* at 30 (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)).)[11]

With respect to Nolan's ineffective assistance of counsel claims, the state court of appeals,

---

[11] "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove (1) that his Fourth Amendment claim is meritorious, and (2) that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice."  *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

applying *Strickland*, ruled against Nolan on these claims.  (Doc. 11 at 30.)  Accordingly, to grant

Nolan relief, the Court must find that the state court of appeals ruling was either contrary to or an

unreasonable application of federal law.  (*Id.*)  Regarding Nolan's first claim of ineffective assistance

of counsel concerning his allegedly unconstitutional arrest, the R&R concludes that his counsel's

failure to file a motion to suppress did not fall below acceptable standards of representation.[12]  (*Id.*)

Similarly, the R&R concluded that Nolan's trial counsel's failure to file a motion to suppress the

vehicle identification did not create a reasonable probability that the outcome of the proceedings

would have been different absent this failure.  (*Id.*)  Specifically, the R&R notes that Nolan's briefing

does not provide a meaningful argument as to how a motion challenging the vehicle identification

would have created a reasonable probability that the outcome of the proceedings would have been

different.  (*Id.* at 30.)

Finally, with respect Nolan's counsel's failure to request an alibi instruction, the R&R notes

that trial counsel's closing argument did not rely on Nolan's purported alibi as a defense, and,

instead, focused on other deficiencies of the state's case.  (Id. at 31.)  The R&R suggests that the

failure to request an alibi instruction could have been a strategic decision.  (*Id.*)  On the basis of the

record before him, Magistrate Judge White concluded that Nolan had not established that the

---

[12] It is not clear from Nolan's Traverse whether he also objects to his counsel's failure to file a motion to suppress the line-up identification.  The point heading of the pertinent section of Nolan's Traverse states "the first omission was not to file a motion to suppress concerning the identification procedure and the illegal and unconstitutional arrest of petitioner."  (Doc. 7 at 14).  The rest of this section of the Traverse, however, never discusses the conduct of the line-up. Instead, the section discusses Nolan's arrest.  (*Id.*)  The R&R similarly does not address the line-up procedure; it only addresses Nolan's ineffective assistance of counsel claim with respect to counsel's failure to file a motion to suppress on the basis of Nolan's allegedly illegal arrest. Nolan, moreover, does not object to the R&R's failure to address his counsel's failure to file a motion to suppress the line-up identification.  Accordingly, the Court will not address the propriety of the line-up procedure.

outcome of the trial would have been different had counsel requested an alibi instruction.  (*Id.*)  For these reasons, the R&R concluded that the state appellate court's application of *Strickland* was neither contrary to nor an unreasonable application of federal law.  Accordingly, the R&R recommends denying Nolan's ineffective assistance of counsel claim.  (*Id.*)

### 1. Nolan's Objections to the R&R's Analysis of His Ineffective Assistance of Counsel Claim

Nolan's only proper objection to the R&R's analysis of his ineffective assistance of counsel claim is to the conclusion that Nolan's Counsel's failure to file a motion to suppress the vehicle identification does not support such a claim.  Specifically, Nolan objects to the R&R's finding that challenging the identification of the vehicle would not have created a reasonable probability that the outcome would have been different, and, thus, that Nolan was not prejudiced by Counsel's decision not to raise the issue.  (Doc 13 at 14.)

### 2. Analysis of Nolan's Objections

Nolan asserts that the there is, in fact, a reasonable probability that the outcome of the trial would have been different if his counsel had filed a motion to suppress the vehicle identification. He argues that

> [w]ithout the vehicle there would be no link to petitioner.  Without petitioner's arrest there would have been no identification procedure.  This would leave the prosecution with no evidence other than the victims statement which gave a generic description of a vehicle and a generic description of a black male was involved.  This would not link specifically petitioner to the event . . .  To adopt, as the Magistrate Judge did, the claim that the identification of the vehicle was harmless, again ignored the record in this case.

(Doc. 13 at 14.)

Contrary to Nolan's assertion, even if his counsel had filed a motion to suppress the victim's

-32-

identification of the vehicle and the court granted the motion to suppress, there is not a reasonable probability that the outcome of the trial would have been different[13].  In this case, the victim identified Nolan as her assailant, both in court and at the line-up identification prior to the trial. *Nolan*, 2007 WL 853217, at *1, 8.  In addition, at trial the victim described the vehicle used by her assailant.  (Doc. 6-9 at 146.)  The arresting officer, moreover, testified that Nolan stated he owned a car closely matching the description given by the victim, and the officer identified four pictures, offered as state's exhibits, as depicting Nolan's vehicle.  (Doc. 6-9 at 193-95, 198-99.)  Taken in total, this evidence is more than sufficient to link Nolan to this crime.  Here, it is not the case that, absent the victim's photo identification of the vehicle, there is no link between Nolan and this crime.

In light of the evidence linking Nolan to the crime, this Court agrees that the State Appellate Court's application of *Strickland* was neither contrary to, nor an unreasonable application of federal law.  Nolan has not shown there is a reasonable probability that the outcome of the trial would have been different if his counsel filed a motion to suppress the vehicle identification.  Accordingly, Nolan's objections are not well-taken, and the Court **ADOPTS** the R&R's findings and conclusions.

### F.    Notice of New Authority

On April 14, 2008, Nolan filed a notice of new authority, which cites *State v. Chapple*, 888 N.E.2d 1121 (Ohio Ct. App. 2008).  In *Chapple*, the state appellate court held that the Ohio criminal child enticement statute, Ohio Rev. Code § 2905.5(A), was unconstitutional.  *Chapple*, 888 N.E.2d

---

[13] It is unlikely any suppression order would have issued.  First it is unlikely the court would have found the identification procedure unduly suggestive, since the question of suggestiveness as to vehicles would not be analyzed as it would in the context of the identification of individuals.  It is less likely, moreover, that, even if the original procedure were deemed suggestive, the court would have found that the in-court identification lacked sufficient indicia of reliability.

at 1125.  As discussed in the R&R, Nolan was not charged or convicted under this statue, and Nolan

has offered no argument regarding this statute's significance to the case at bar.  Nolan, moreover,

has not objected to this portion of the R&R.  Accordingly, this Court **ADOPTS** the R&R's findings

and conclusion with respect to Nolan's new authority.

## IV.      THE COURT WILL NOT ISSUE A CERTIFICATE OF APPEALABILITY

For the foregoing reasons, the Court finds that Nolan did not make "a substantial showing

of the denial of a constitutional right" with respect to any of his claims in his Petition.  28 U.S.C. §

2253(c)(2).  Accordingly, the Court will <u>not</u> issue a certificate of appealability.

Additionally, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this

decision could not be taken in good faith.

## V.       CONCLUSION

For the reasons discussed above, this Court finds that Nolan's objections to the R&R are not

well-taken, and accordingly, Magistrate Judge White's thorough R&R (Doc. 11) is **ADOPTED,**

except as **MODIFIED** with respect to Nolan's third ground for relief.  Consequently, Nolan's

objections are **OVERRULED** and his Petition is hereby **DISMISSED**.

**IT IS SO ORDERED.**

                              s/Kathleen M. O'Malley
                              **KATHLEEN McDONALD O'MALLEY***

 **Dated:  January 21, 2011**

   * *United States Circuit Judge for the United States Court of Appeals for the Federal Circuit,*
*sitting by designation.*

-34-